PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, an Iowa corporation, and City Market, Inc., a Colorado corporation, Plaintiffs–Appellees,

v.

PROGRESSIVE MOUNTAIN INSURANCE COMPANY, a Colorado corporation, Defendant–Appellant.

No. 98CA1490.

Colorado Court of Appeals,
Div. IV.

Sept. 16, 1999.

Certiorari Granted May 30, 2000.*

Antonio Bates Bernard, P.C., John L. Wheeler, Denver, Colorado, for Plaintiffs–Appellees.

White and Steele, P.C., Frederick W. Klann, Keith R. Olivera, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BRIGGS.

This case involves an exclusion from the required scope of personal injury protection (PIP) coverage under an insurance policy subject to the Colorado Auto Accident Reparations Act (No–Fault Act). Defendant, Progressive Mountain Insurance Company (the vehicle insurer), appeals the summary judgment entered in favor of plaintiffs, Principal Mutual Life Insurance Company (the medical insurer) and City Market, Inc. (wife's employer). We reverse and remand for entry of summary judgment in favor the vehicle insurer.

## I.

The vehicle insurer provided automobile insurance for the vehicle owner (wife), who resided with her husband and their infant daughter. Husband was a named excluded driver under the policy.

Wife permitted husband to drive the vehicle. While backing it out of their driveway, husband struck and injured the daughter. Because husband was excluded from coverage by name, the vehicle insurer denied PIP coverage for daughter's injuries.

At the time of the accident, wife's employer provided comprehensive medical insurance through the medical insurer, which also insured wife's daughter as a dependent. The medical insurer paid the daughter's medical and rehabilitation expenses resulting from the accident. It then filed a declaratory judgment action under C.R.C.P 57(a) seeking recovery by subrogation of these expenses from the vehicle insurer. The parties stipulated to the undisputed facts and filed cross-motions for summary judgment. The trial court concluded that § 10–4–721, C.R.S.1999, which would otherwise have excluded PIP coverage, was not applicable. Its reasoning was that § 10–4–707(1)(b), C.R.S.1999, required that PIP benefits be provided for a relative of a named insured, subject only to the statutory exception for a resident relative using or operating the relative's own vehicle not covered by the No–Fault Act. Because the vehicle involved was not owned by the daughter, § 10–4–707(1)(b) specifically required PIP coverage, and that specific coverage was not limited by the general exclusion in § 10–4–721. The court therefore granted summary judgment in favor of the medical insurer.

## II.

The vehicle insurer contends that, although § 10–4–707 defines the scope of PIP coverage for a relative of a named insured, § 10–4–721 provides an exclusion from that coverage applicable in the circumstances present here. While we recognize the logic in the trial court's reasoning, we agree with the vehicle insurer that the exclusion in § 10–4–721 applies.

An insurer is obligated to provide PIP coverage. Section 10–4–706(1), C.R.S.1999. Section 10–4–707(1)(b), C.R.S.1999, states that, for a relative of a named insured, PIP coverage is applicable to:

Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) . . . if the relative at the time of the accident is a resident in the household of the named insured . . . except where the relative is injured as a result of the use or operation of his own motor vehicle not actually covered under the terms of [the No–Fault Act]. . . .

The referenced "paragraph (a)," § 10–4–707(1)(a), C.R.S.1999, in turn provides that PIP coverage is applicable to:

Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction, except where the injury is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of [the No–Fault Act].

However, an insurer's obligation to provide PIP coverage is "subject to the limitations and exclusions authorized by [the No–Fault Act]." Section 10–4–706(1)(a), C.R.S.1999. One of those exclusions is described in § 10–4–721, C.R.S.1999.

Section 10–4–721(1), C.R.S.1999, addresses the circumstance where an insurer is otherwise authorized to cancel, refuse to renew, or increase the premiums on, a policy insuring more than one person because of the claim experience or driving record of one or more but less than all of the persons insured under the policy. It requires that the insurer first offer to continue or renew coverage but "exclude from coverage, by name, the person whose claim experience or driving record would have justified" the cancellation, nonrenewal, or increase in premiums.

Section 10–4–721(2), C.R.S.1999, further provides as follows:

> With respect to any person excluded from coverage under this section, the policy may provide that *the insurer shall not be liable for damages, losses, or claims arising out of this operation or use of the insured motor vehicle*, whether or not such operation or use was with the express or implied permission of a person insured under the policy. (emphasis added)

Here, the exclusion in wife's policy mirrored the exclusion authorized under § 10–4–721. Hence, the question presented is one of statutory construction.

■■■ In construing a statutory scheme, we must give effect to the intent of the General Assembly. Further, a statutory scheme must be read and considered as a whole and should be construed to give consistent, harmonious, and sensible effect to all of its parts. This typically requires that we give effect to each statute's plain and ordinary meaning. Nevertheless, a statutory interpretation that defeats the legislative intent or leads to an absurd result will not be followed. *AviComm, Inc. v. Colorado Public Utilities Commission,* 955 P.2d 1023 (Colo. 1998).

### A.

■■ The medical insurer argues that § 10–4–721 should not be read as authorizing the exclusion of PIP coverage. However, a division of this court has considered the validity of a similar exclusion on a claim for uninsured motorist (UM) benefits. In determining that the exclusion operated to preclude UM coverage, the division concluded that "the effect of the excluded driver endorsement is to revoke *all* insurance coverage on the vehicle ... if the vehicle is operated by the excluded driver." *Lopez v. Dairyland Insurance Co.,* 890 P.2d 192, 195 (Colo.App.1994); *see also Sersion v. Dairyland Insurance Co.,* 757 P.2d 1169, 1170 (Colo.App.1988) ("This language [of § 10–4–721(2)] clearly and unambiguously demonstrates a legislative intent to authorize an insurer to exclude from coverage all liability arising from the use of an automobile by certain named drivers....").

We find the reasoning in *Lopez* and *Sersion* persuasive. Section 10–4–721 unambiguously authorizes an insurer to exclude from coverage *all* liability for *any* insurance coverage on an insured vehicle operated by a named person excluded from coverage. This necessarily includes PIP coverage.

### B.

The medical insurer argues that, even if § 10–4–721 permits an insurer to exclude PIP coverage for some claimants otherwise entitled to benefits under § 10–4–707, properly construed, the exclusion does not apply to certain other claimants. The difference, according to the medical insurer, turns on whether § 10–4–707 makes the right to benefits dependent upon the insured vehicle being involved in the accident or instead upon the status of the claimant.

For example, under § 10–4–707(1)(c), C.R.S.1999, pedestrians and occupants who are not named insureds or relatives of named insureds are entitled to recover PIP benefits from the owner of an insured vehicle only if the vehicle involved in the accident is an insured vehicle. In contrast, under § 10–4–707(1)(a), a named insured can recover PIP benefits for injuries incurred in an accident

"involving any motor vehicle." Under § 10–4–707(1)(b), a relative of a named insured can recover benefits under the circumstances described in § 10–4–707(1)(a), and thus can likewise recover PIP benefits for injuries incurred in an accident "involving any motor vehicle." Thus, as summarized in *Murphy v. Dairyland Insurance Co.,* 747 P.2d 691, 695 (Colo.App.1987), PIP benefits under § 10–4–707(1)(b) "are not limited to injuries associated with the use of a specific vehicle."

Under the medical insurer's argument, PIP coverage under § 10–4–707(1)(b) for a resident relative of a named insured is therefore not dependent upon, or does not "follow," the motor vehicle involved in the accident. In contrast, the exclusion authorized by § 10–4–721 is dependent upon, or "follows," the insured motor vehicle and the driver of the vehicle.

The result, according to the medical insurer, is that the exclusion in § 10–4–721 may apply to PIP benefits available under § 10–4–707(1)(c), as the division concluded in *Lopez.* However, the exclusion does not apply to PIP benefits available under §§ 10–4–707(1)(a) and 10–4–707–(1)(b). This would apparently be because an accident involving even an uninsured vehicle is still an accident "involving any motor vehicle."

The argument is not without some appeal. However, we ultimately find it unpersuasive.

As already discussed, the language in § 10–4–721 is unambiguous. The statutory construction urged by the medical insurer would be contrary to that unambiguous language.

In addition, it is not entirely accurate to say that PIP coverage for a named insured or a relative of a named insured under §§ 10–4–707(1)(a) and 10–4–707(1)(b) is dependent upon, or "follows," the claimant, without any consideration of the vehicle involved in the accident. For example, § 10–4–707(1)(b) contains an exception to its broad grant of PIP coverage to relatives of named insureds for injuries "involving any motor vehicle," an exception that is dependent on the vehicle involved in the accident. PIP coverage is not provided for injuries resulting from the use or operation of a relative's own motor vehicle that is not an insured vehicle under the No–Fault Act.

Section 10–4–707(1)(a) contains a similar exception to the PIP coverage afforded a named insured. The exception is for a vehicle owned by the named insured and not an insured vehicle under the No–Fault Act. Because § 10–4–707(1)(b) makes PIP coverage applicable to relatives of named insureds only in the circumstances described in § 10–4–707(1)(a), this exception also applies to relatives of a named insured.

It is therefore more accurate to say that the determination of PIP coverage under § 10–4–701(1) always involves consideration of both the particular injury victim and the particular vehicle involved in the accident. In determining the scope of PIP coverage for occupants and pedestrians under § 10–4–707(1)(c), a particular vehicle has relevance in defining the scope of coverage. In contrast, in determining the scope of PIP coverage for named insureds and relatives of named insured under §§ 10–4–707(1)(a) and 10–4–707(1)(b), a particular vehicle has relevance in defining exclusions from the scope of coverage.

■ Section 10–4–721 merely defines an additional exclusion from the scope of coverage defined in § 10–4–707(1). Nothing in the language of the statutory scheme leads us to conclude that, merely because a limitation or exclusion is contained in a separate statutory provision, it therefore cannot be applicable to § 10–4–707(1)(a) or § 10–4–707(1)(b). Rather, the coverages required by the No–Fault Act are subject to limitations and exclusions authorized anywhere in the Act. *See* § 10–4–706(1).

Nor are we persuaded to reach a contrary result by the holdings in *State Farm Mutual Automobile Insurance Co. v. McMillan,* 925 P.2d 785 (Colo.1996) and *State Farm Mutual Automobile Insurance Co. v. Tye,* 931 P.2d 540 (Colo.App.1996). In both *McMillan* and *Tye,* the court had to resolve whether a limitation on UM coverage for "accidents" included injuries sustained by an occupant of a vehicle when intentionally shot by an occupant of another vehicle. In both cases, the court concluded that the term "accident" was

ambiguous. Construing the term against the insurer and from the perspective of the injury victim, the court in each case concluded the injuries were sustained in an "accident."

■ However, in both *McMillan* and *Tye,* the issue presented was the proper interpretation of a term in an insurance policy that was deemed ambiguous. The medical insurer in this case does not argue that any term in wife's policy exclusion is ambiguous. Indeed, just as with liability and UM benefits, there could be no objectively reasonable expectation here that the vehicle insurer would be liable for PIP benefits when the endorsement expressly excluded coverage for any "damages, losses, or claims" arising out the operation of the vehicle in question by the excluded driver. *See Lopez v. Dairyland Insurance Co., supra; Sersion v. Dairyland Insurance Co., supra; see also State Farm Mutual Automobile Insurance Co. v. Graham,* 860 P.2d 566 (Colo.App.1993).

Furthermore, this case turns, not on the interpretation of a policy term, but on the construction of applicable statutes. As already discussed, while §§ 10–4–707(1)(a) and 10–4–707(1)(b) define the applicability of PIP coverage in terms of particular injury victims, both contain exclusions defined in terms of particular vehicles. As already discussed, § 10–4–721 simply adds an additional exclusion.

■ Here, the vehicle in question was owned by the named insured, and the policy contained the additional exclusion authorized by § 10–4–721(2). As a result of that exclusion, the vehicle involved in the accident in question became one owned by a named insured and *not* covered under the No–Fault Act. Thus, the express exception to PIP coverage under § 10–4–707(1)(a) became applicable. Because that exception is incorporated into § 10–4–707(1)(b), wife's daughter, as a resident relative of a named insured, was properly excluded from PIP coverage.

### C.

■ We have concluded that the plain language of § 10–4–721 appears to authorize the exclusion of PIP coverage for resident relatives. Nevertheless, we recognize that resi-

dent relatives excluded from PIP coverage will typically be innocent injury victims, like the infant daughter in this case. We further recognize our obligation to avoid a statutory construction, even of unambiguous statutes, that defeats the legislative purpose or leads to an absurd result. *See AviComm, Inc. v. Colorado Public Utilities Commission, supra.*

■ The purpose of the No–Fault Act is set forth in § 10–4–702, C.R.S.1999. As summarized by the supreme court in *Meyer v. State Farm Mutual Automobile Insurance Co.,* 689 P.2d 585 (Colo.1984), that purpose is to avoid inadequate compensation to victims of automobile accidents by requiring motor vehicle owners to purchase insurance policies that include coverage for both liability and PIP benefits.

As noted by the medical insurer, our statutory construction does not *further* the legislative purposes of avoiding inadequate compensation to victims of automobile accidents by requiring insurance coverage. However, that does not mean our statutory construction *defeats* the legislative purpose.

*Any* limitation on or exclusion from insurance coverage is contrary to the stated goal, yet the No–Fault Act expressly authorizes limitations and exclusions. *See* § 10–4–706(1). The Act thus also recognizes the importance of competing social goals. These presumably include protecting freedom of contract and making insurance available to at least one family member, despite the claims experience or driving record of another. *See Country Mutual Insurance Co. v. Hertz Corp.,* 981 P.2d 1118 (Colo.App.1999) (Colorado recognizes a "strong" policy of freedom of contract); *see also Lopez v. Dairyland Insurance Co., supra; Sersion v. Dairyland Insurance Co., supra; cf. Schlessinger v. Schlessinger,* 796 P.2d 1385 (Colo.1990) (concluding that, despite the enactment of the No–Fault Act requiring liability coverage, children are still precluded by the qualified parental immunity rule from bringing tort actions against their parents—which can result in inadequate compensation).

Nor can we say that the result is absurd, even if the result is that *no* remedy is avail-

able. For example, when a child is injured by a parent's negligence in an accident *not* involving an automobile, compensation may not be available through insurance. The child is therefore left with no remedy. *See Horton v. Reaves,* 186 Colo. 149, 526 P.2d 304 (Colo.1974). The result is nevertheless not deemed absurd because of the public policy considerations that led to recognition of qualified parental immunity. *See Trevarton v. Trevarton,* 151 Colo. 418, 378 P.2d 640 (1963); *see also Terror Mining Co., Inc. v. Roter,* 866 P.2d 929 (Colo.1994).

In a similar fashion, the General Assembly has, at least implicitly, recognized that in some circumstances the goal of avoiding inadequate compensation to victims of automobile accidents can be outweighed by competing social goals, even if a victim is left with no other remedy. It has done so by permitting limitations on and exclusions from insurance coverage, including the exclusion set forth in § 10–4–721.

In sum, it is for the General Assembly to balance competing social goals. However unfortunate the result may appear in some circumstances, we cannot supply a right or remedy the General Assembly has chosen not to provide. *See generally* H. Hart & A. Sacks, *The Legal Process: Basic Problems in the Making and Application of Law* (Eskridge & Frickey eds.1994).

We conclude that § 10–4–721 unambiguously authorizes the exclusion of the PIP coverage otherwise available to a resident relative when the relative is injured by a named person excluded from coverage. We further conclude that our statutory construction neither defeats the legislative purpose of the No–Fault Act nor leads to an absurd result.

In light of our resolution of this issue, it is unnecessary to address the additional arguments raised on appeal by the vehicle insurer.

The summary judgment entered in favor of the medical insurer is reversed. The cause is remanded with directions that summary judgment be entered in favor of the vehicle insurer.

Chief Judge HUME and Judge KAPELKE concur.