27 P.3d 343 (2001)
PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, an Iowa corporation; and City Market, Inc., a Colorado corporation, Petitioners,
v.
PROGRESSIVE MOUNTAIN INSURANCE COMPANY, a Colorado corporation, Respondent.
No. 99SC836.
Supreme Court of Colorado, En Banc.
April 30, 2001.
Antonio Bates Bernard, P.C., John L. Wheeler, Denver, CO, Attorney for Petitioners.
White and Steele, P.C., Frederick W. Klann, Keith R. Olivera, Denver, CO, Attorneys for Respondent.
Justice HOBBS delivered the Opinion of the Court.
The Colorado Auto Accident Reparations Act (No-Fault Act) permits auto insurers to offer a "named driver exclusion" on certain insurance policies. Where an individual's driving record justifies the cancellation or nonrenewal of a policy, the insurer shall instead offer to exclude that individual from all *344 coverage on the policy and retain coverage for the remaining drivers. See § 10-4-721, 3 C.R.S. (2000). We granted certiorari to review the court of appeals' decision in Principal Mutual Life Insurance Co. v. Progressive Mountain Insurance Co., 1 P.3d 250 (Colo.App.1999), to determine whether a named driver exclusion pursuant to section 10-4-721 precludes a resident relative of a named insured from collecting personal injury protection (PIP) benefits for injuries sustained in an accident involving an excluded driver.[1] We hold that when a named insured's policy expressly excludes coverage when a certain driver operates or uses a motor vehicle otherwise covered under the policy, the named insured's resident relatives are not entitled to PIP benefits for injuries arising out of the excluded driver's use or operation of the vehicle.

I.
The facts in this case are undisputed. Bonnie Wancura (Bonnie) insured her pickup truck with Progressive Mountain Insurance Company (Progressive), in accordance with the No-Fault Act. Her policy covered the period from August 22, 1995 to January 28, 1996. Pursuant to section 10-4-721, Bonnie signed an endorsement excluding her husband, Mark Wancura (Mark), from coverage on her policy. The endorsement provided:
In consideration of the premium charged for the policy to which this endorsement is attached, it is agreed that [Progressive] shall not be liable for damages, losses, or claims arising out of operation or use of your insured car or any other automobile to which the terms of this policy are extended..., either with or without the expressed or implied permission of the named insured(s), by the drivers listed below as excluded.
The named insured(s) further agrees that Progressive shall not be liable and no liability or obligation of any kind shall attach to Progressive for any negligence which may be imputed by law to the named insured(s) arising out of the maintenance, operation or use of a motor vehicle by the drivers listed below.
On November 2, 1995, while backing up the truck in their driveway, Mark struck and injured their infant daughter, Miranda. Because Mark was an excluded driver under the policy, Progressive denied PIP coverage for Miranda's injuries.
Bonnie was an employee of City Market, Inc. (City Market) at the time of the accident. City Market provided comprehensive medical expense coverage to Bonnie and Miranda (as a dependant) through Principal Mutual Life Insurance Company (Principal). Principal paid Miranda's medical and rehabilitation expenses resulting from the accident.
Principal subsequently filed a declaratory judgment action under C.R.C.P. 57(a), seeking recovery of the medical expenses by subrogation from Progressive. Both parties stipulated to the facts and filed cross-motions for summary judgment. In June 1998, the trial court issued an order directing Progressive to reimburse Principal for Miranda's medical and rehabilitation expenses. The trial court construed the No-Fault Act to provide PIP coverage for resident relatives of a named insured for all vehicle-related accidents except in narrow circumstances that were not applicable to the instant case.
The court of appeals reversed. First, the court held that section 10-4-721 "unambiguously authorizes an insurer to exclude from coverage all liability for any insurance coverage on an insured vehicle operated by a named person excluded from coverage." Principal, 1 P.3d at 253. The court of appeals then determined that the provision of the No-Fault Act authorizing payment of benefits to resident relatives of the insured, section 10-4-707(1)(b), 3 C.R.S. (2000), was subject to the limitation in section 10-4-721. Principal, 1 P.3d at 255. The court of appeals concluded that this result was acceptable even though it left no available remedy, *345 because the General Assembly has recognized that compensation for auto accidents involves competing social goals, and that furtherance of certain goals may mean that in some circumstances, a victim is left with no remedy. See id. at 255-56.
We granted certiorari, and affirm the judgment of the court of appeals.

II.
We hold that when a named insured's policy expressly excludes coverage when a certain driver operates or uses a motor vehicle otherwise covered under the policy, the named insured's resident relatives are not entitled to PIP benefits for injuries arising out of the excluded driver's operation or use of the vehicle.

A.

Scope and Purpose of the No-Fault Act
Colorado enacted the No-Fault Act in 1973 as part of a nationwide trend toward statutory no-fault insurance schemes. See ch. 94, sec. 1, §§ 13-25-1 to -23, 1973 Colo. Sess. Laws 334; Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc., 947 P.2d 341, 344 (Colo.1997). The No-Fault Act requires all registered owners of motor vehicles operated in Colorado to obtain insurance policies that carry liability and no-fault insurance coverage. See § 10-4-706, 3 C.R.S. (2000); Meyer v. State Farm Mut. Auto. Ins. Co., 689 P.2d 585, 588 (Colo.1984). The legislative intent behind the No-Fault Act is to maximize insurance coverage and to ensure that persons injured in automobile accidents are fully compensated for their injuries. See § 10-4-702, 3 C.R.S. (2000); Allstate Ins. Co. v. Smith, 902 P.2d 1386, 1387-88 (Colo.1995); Meyer, 689 P.2d at 588.
Under the no-fault scheme, insurers provide PIP benefits for injuries sustained by their own policy holders, without regard to fault. See § 10-4-706(1)(b)(I); 2 James K. Hammitt, Automobile Accident Compensation 1 (1985). These benefits cover medical and rehabilitation costs, loss of income, and death benefits. See generally § 10-4-706. In this case, we face a limitation on the PIP coverage normally afforded to resident relatives under the No-Fault Act. We examine this limitation both with an eye to the statutory text and with an appreciation of the Act's remedial and beneficent purposes. See Regional Transp. Dist. v. Voss, 890 P.2d 663, 669 (Colo.1995); Travelers Indem. Co. v. Barnes, 191 Colo. 278, 283, 552 P.2d 300, 304 (1976).

B.

Limitations on Collection of PIP Benefits
The No-Fault Act designates three types of recipients for PIP benefits: (1) named insureds; (2) resident relatives of named insureds; and (3) "any other person" who is injured while occupying a motor vehicle or struck by a motor vehicle as a pedestrian. § 10-4-707(1). For resident relatives, the No-Fault Act provides that PIP benefits are applicable to:
Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) of this subsection (1), if the relative at the time of the accident is a resident in the household of the named insured (whether or not temporarily residing elsewhere), except where the relative is injured as a result of the use or operation of his own motor vehicle not actually covered under the terms of this part 7.
§ 10-4-707(1)(b). Resident relatives must incur their injuries under the circumstances described in section 10-4-707(1)(a). That paragraph provides that PIP coverage shall be applicable to:
Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or any other jurisdiction, except where the injury is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of this part 7.
Reading these paragraphs together, we have concluded that resident relatives can collect PIP benefits for injuries sustained in an accident involving any motor vehicle in any jurisdiction, subject to certain limitations. *346 See § 10-4-707(1)(a) & (b), DeHerrera v. Sentry Ins., 30 P.3d 167 (Colo.2001). Two of these limitations are contained in the text of section 10-4-707 itself. The accident may not involve the resident relative's owned but uninsured vehicle. § 10-4-707(1)(b). Nor may it involve the named insured's owned but uninsured vehicle. See Williams-Diehl v. State Farm Fire & Cas. Co., 793 P.2d 587, 589 (Colo.App.1989) (concluding that "[b]ecause § 10-4-707(1)(b) extends personal injury protection to an insured relative only under the same circumstances that would support coverage in § 10-4-707(1)(a)," the involvement of a named insured's owned but uninsured vehicle excludes a resident relative from PIP coverage).[2]
The limitations stated in section 10-4-707(1), however, are not the only limitations on PIP benefits. The payment of benefits  including benefits to resident relatives  is broadly conditioned on the limitations and exclusions contained throughout the No-Fault Act. Section 10-4-706 sets forth the types of coverage mandated by the Act, and provides that all coverage is "[s]ubject to the limitations and exclusions authorized by" the Act. Likewise, section 10-4-712(1), 3 C.R.S. (2000), states that "[t]he coverages described in section 10-4-706 may be subject to conditions and exclusions which are not inconsistent with the requirements" of the No-Fault Act. Because payment of benefits under section 10-4-707 is dependent on the types of coverage described in section 10-4-706, and because this coverage is subject to the limitations in the No-Fault Act, a claimant may not receive benefits if an authorized exclusion or limitation applies.[3]
We must therefore consider whether the named driver exclusion is an authorized exception or limitation on coverage under the No-Fault Act, and whether it is consistent with the basic purposes of the No-Fault Act. If section 10-4-721 does provide an authorized limitation, it takes precedence over the provisions in sections 10-4-706 and 10-4-707.

C.

Named Driver Exclusion
Named driver exclusions in insurance policies are permitted under the circumstances described in section 10-4-721. That section provides:
(1) In any case where an insurer is authorized under this part 7 to cancel or refuse to renew or increase the premiums on an automobile liability insurance policy under which more than one person is insured because of the claim experience or driving record of one or more but less than all of the persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to continue or renew the insurance but to exclude from coverage, by name, the person whose claim experience or driving record would have justified the cancellation or nonrenewal. The premiums charged on any such policy excluding a named driver shall not reflect the claims, experience, or driving record of the excluded named driver.
(2) With respect to any person excluded from coverage under this section, the policy may provide that the insurer shall not be liable for damages, losses, or claims arising out of this operation or use of the insured motor vehicle, *347 whether or not such operation or use was with the express or implied permission of a person insured under the policy.
(Emphasis added.) The language of section 10-4-721 expresses a clear legislative intent to authorize an insurer to exclude from coverage certain drivers whose driving records would otherwise render the policy subject to cancellation, nonrenewal, or significant increase in premiums. See Sersion v. Dairyland Ins. Co., 757 P.2d 1169, 1170 (Colo.App. 1988). The insurer may construct a policy that frees it from liability for damages, losses, or claims arising out of the operation of the motor vehicle by the excluded driver. See Lopez v. Dairyland Ins. Co., 890 P.2d 192, 196 (Colo.App.1994); State Farm Mut. Auto. Ins. Co. v. Graham, 860 P.2d 566, 567 (Colo.App.1993); Sersion, 757 P.2d at 1171. The use of the word "claims" in the statute necessarily includes an exemption from liability for PIP claims. Furthermore, the language of exemption in section 10-4-721 parallels the language of coverage in section 10-4-706 of the No-Fault Act. See § 10-4-706(1)(b)(I) & (c)(I) (requiring coverage "for bodily injury arising out of the use or operation of a motor vehicle"). This parallel text demonstrates that a named driver exclusion prevents insurer liability under the very conditions where PIP coverage might ordinarily be available.[4]
Section 10-4-721's exemption from liability accords with the policy behind the No-Fault Act; by excluding from coverage certain high-risk drivers, the insurer can maintain full coverage for the other drivers on the policy, and therefore can increase overall insurance coverage.
We therefore conclude that a named driver exclusion pursuant to section 10-4-721 is an authorized limitation on the payment of benefits under section 10-4-707(1). This conclusion is supported by the plain language of section 10-4-721, its position within the context of the No-Fault Act, and its underlying purpose of maximizing coverage by permitting insurers to exclude certain high-risk drivers. In so holding, we join a number of other states that have reached similar conclusions. See, e.g., Torrez v. State Farm Mut. Auto. Ins. Co., 130 Ariz. 223, 635 P.2d 511, 516 (Ct.App.1981) (determining that a "named driver" exclusion "is effective to absolve [the insurer] of any liability arising from this accident"); Detroit Auto. Inter-Ins. Exch. v. Commissioner of Ins., 86 Mich. App. 473, 272 N.W.2d 689, 691-92 (1978) (holding valid a named driver exclusion in the context of no-fault insurance); Phoenix Indem. Ins. Co. v. Pulis, 129 N.M. 395, 9 P.3d 639, 644 (2000) (holding that named driver exclusions are valid endorsements that are "applicable to all auto coverage"); Wright v. Rodney D. Young Ins. Agency, 905 S.W.2d 293, 295 (Tex.Ct.App.1995) (holding valid an excluded driver endorsement that "clearly states that there is no coverage afforded to anyone when the excluded driver is operating a motor vehicle").
Strong legislative public policy considerations also underscore this conclusion. The exclusion in section 10-4-721 is premised in part on the presumption that the named insured will have incentive to prevent the excluded driver from operating the vehicle listed in the policy. Requiring an insurer to pay PIP benefits where an excluded driver operates a motor vehicle reduces the incentive of the named insured to prevent the excluded driver from operating the vehicle. Such a requirement would also force the insurer to provide PIP benefits where an excluded driver injures a member of his own household, even though measures can more easily be taken to prevent these types of accidents than collisions between unrelated persons. Finally, requiring an insurer to pay PIP benefits in this situation compels the insurer to provide coverage that is not commensurate with the premiums paid. Accord Nationwide Mut. Ins. Co. v. Miller, 305 Md. 614, 505 A.2d 1338, 1340 (1986). No provision of the No-Fault Act dictates such a result.
*348 Bonnie expressly excluded Mark from her policy pursuant to section 10-4-721, and Progressive adjusted Bonnie's premiums accordingly. The text of the named driver exclusion in her policy echoed the language absolving insurer liability in section 10-4-721. Because Bonnie assented to this statutorily authorized limitation, Progressive is not liable for PIP claims for Miranda's injuries arising from Mark's operation of the pickup truck.

III.
Accordingly, we affirm the judgment of the court of appeals.
NOTES
[1] We granted certiorari on the following issue: Whether the court of appeals erred in reversing the trial court by denying Personal Injury Protection (PIP) coverage to the resident relative of a named insured based on the "named driver" exclusion, C.R.S. § 10-4-721(2), when broad and unrestricted PIP coverage is otherwise provided to the resident relative under C.R.S. § 10-4-707(1)(b) for any accident involving any vehicle and any operator.
[2] While we approve of Williams-Diehl's discussion of the "owned but uninsured" exclusion in the context of PIP coverage, we have declined to extend it to uninsured motorist coverage. See DeHerrera, 30 P.3d at 176 n. 9. As we noted in DeHerrera, the No-Fault Act explicitly excludes from PIP coverage injuries arising from the operation of the named insured's owned but uninsured vehicle, while the uninsured motorist statute makes no such express exclusion.
[3] The language of sections 10-4-706(1) and -712(1) does not state specific exclusions or limitations that affect coverage. Rather, all consistent exclusions and limitations authorized by the No-Fault Act apply. Cf. Unigard Sec. Ins. Co. v. Schaefer, 572 S.W.2d 303, 307 (Tex.1978) (holding that a "named driver" exclusion did not preclude collection of PIP benefits because the statute only excluded benefits in the case of intentional injury, the commission of a felony, or attempting to elude arrest).
[4] We caution, however, that the language of section 10-4-721 only absolves from liability the insurer issuing the policy in which the driver is excluded. If Mark had injured an unrelated third party, for example, the third party's insurer would remain liable for the third party's PIP claims to the extent they were available.