**Cheri MUNOZ, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

**No. 95CA2136.**

Colorado Court of Appeals, Div. II.

April 2, 1998.

Walter H. Sargent, P.C., Walter H. Sargent, Colorado Springs; Gregory A. Maceau, P.C., Gregory A. Maceau, Colorado Springs, for Plaintiff–Appellee.

Debra Sutton & Associates, P.C., Debra K. Sutton, David W. Bute, Littleton, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Defendant, State Farm Mutual Insurance Co. (State Farm), appeals from the judgment entered on jury verdicts in favor of plaintiff, Cheri Munoz, on her claims for breach of contract under § 10–4–708, C.R.S.1997, and bad faith breach of contract. We affirm.

Plaintiff was injured in automobile accidents in 1982 and 1988. In each case, she was insured under the No–Fault Act, § 10–4–701, et seq., C.R.S.1997, by State Farm, who paid her some $80,000 over the course of several years for medical expenses she incurred. During the course of these payments, State Farm had plaintiff undergo several independent medical examinations to determine whether the expenses being incurred were reasonable, necessary, and related to the injuries suffered by her.

In February 1992, plaintiff was involved in yet a third accident. Her policy with State Farm was still in effect. Whether she suffered new physical injuries or aggravated those incurred in the former accidents was the subject of dispute at trial. However, after receiving several medical bills for treatment allegedly necessary because of injuries arising out of the latest accident, State Farm had plaintiff undergo another independent medical examination, and in June 1992, based on the report of that examiner, it denied that plaintiff had suffered any physical injuries in the 1992 accident. Consequently, it refused to pay most of her medical bills.

Based upon these circumstances, plaintiff instituted suit against State Farm claiming that: (1) State Farm's refusal to pay benefits in a timely fashion violated § 10–4–708, C.R.S.1997; (2) its actions constituted a bad faith breach of the policy of insurance; and (3) its actions constituted outrageous conduct. The jury returned a verdict in plaintiff's favor on each claim, awarding her some $24,000 on her statutory claim and $150,000 on her bad faith claim. While the jury found that State Farm was guilty of outrageous conduct, it concluded that plaintiff had sus-

tained no additional damage as a result of that conduct.

After the verdict, the trial court invoked § 10–4–708(1.8), C.R.S.1997, and trebled plaintiff's damage award on her statutory claim.

I.

State Farm first argues that the judgment based upon its violation of § 10–4–708 must be set aside and a new trial ordered because the verdict upon which that judgment is based was rendered under a prejudicially erroneous instruction. However, even if we assume that the instruction was erroneous in the respect urged, we nevertheless conclude that the jury's special findings demonstrate that the verdict was based upon a proper determination that State Farm had violated the pertinent statute. Hence, any error in the instruction was harmless.

Section 10–4–708, entitled "Prompt *payment* of direct benefits" (emphasis supplied), provides that: "Benefits for any period are overdue if not *paid* within thirty days after the insurer receives reasonable proof of the fact and amount of expenses incurred during that period. . . ." And, if the insurer "fails to *pay* such benefits due, the person may bring an action in contract to recover the same." Section 10–4–708(1), C.R.S.1997 (emphasis supplied). This statute makes no reference to any requirement that the insurer *deny* the claim, if it fails to pay benefits.

Here, however, the court instructed the jury that it could find that State Farm had breached § 10–4–708(1) either because "it failed to *pay* all . . . benefits" or because it "failed to *deny* the . . . benefits in a timely manner." (emphasis supplied)

We will assume, without deciding, that, by imposing upon State Farm the statutory duty to deny a claim within 30 days, the trial court erred. Nevertheless, even if this were so, the error resulted in no prejudice to State Farm.

This instruction, at worst, allowed the jury to find that State Farm had violated its statutory duty in either or both of two ways. However, the jury's special findings made clear that the only damages awarded under

this claim were those for benefits that State Farm "did not *pay* pursuant to the contract." (emphasis supplied) No award of damages was based upon State Farm's failure to *deny* plaintiff's claim.

Hence, because the record is clear that the judgment on plaintiff's statutory breach of contract claim was based upon State Farm's failure to pay benefits, and not upon any violation of the alleged duty to deny their payment in a timely manner, the error, if any, in the questioned instruction had no effect upon the judgment entered on this claim.

## II.

State Farm next argues that the court erroneously trebled the amount the jury awarded plaintiff on her statutory breach of contract claim. Under the circumstances presented here, we disagree.

Section 10-4-708(1.8), C.R.S.1997, provides that, in the event of a willful and wanton failure by an insurer to pay benefits when due, the insured shall be entitled to "an amount which is three times the amount of the unpaid benefits recovered in the proceedings."

Here, as part of her statutory claim, plaintiff had specifically alleged that State Farm's conduct was willful and wanton. However, the trial court, apparently concluding that such an allegation would be relevant only if exemplary damages had been requested and that no such request had been made, did not instruct the jury with respect to this allegation. It did instruct, however, both upon plaintiff's bad faith claim and upon her outrageous conduct claim, and by special verdicts, the jury found that State Farm was guilty of both.

Thereafter, concluding that the jury's finding that State Farm had engaged in extreme and outrageous conduct was the equivalent of a finding of willful and wanton conduct, the trial court increased the amount of the jury verdict as contemplated by § 10-4-708(1.8). We conclude that such action was, under the circumstances, not improper.

In *Dale v. Guaranty National Insurance Co.*, 948 P.2d 545 (Colo.1997), our supreme court determined that a claim that an insurer in a first party insurance contract has engaged in willful and wanton conduct describes conduct that is a "subset" of a claim based upon that insured's bad faith conduct. Hence, while bad faith may include other types of actions, willful and wanton conduct will always constitute bad faith conduct.

■ Of course, to be sustainable, a claim for outrageous conduct must be based upon action that is more egregious than either the conduct underlying a bad faith breach of contract claim or a willful and wanton breach of contract claim.

■ A claim based on bad faith against a first party insurer requires only proof of unreasonable action by the insured and of knowledge, or reckless disregard, of the unreasonableness of that action. *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo. 1991).

■ A claim based on willful and wanton conduct requires proof that the insurer acted without justification and in disregard of the insured's rights. *Dale v. Guaranty National Insurance Co., supra.*

■ A claim based upon outrageous conduct, on the other hand, requires proof that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo.1988). It requires that the conduct be undertaken recklessly or with an intent to cause the plaintiff severe emotional distress. *See CJI–Civ.3d* 23:1 (1989); *Culpepper v. Pearl Street Building, Inc.*, 877 P.2d 877 (1994); *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970).

Here, the evidence was sufficient to support the jury's finding that State Farm and its agents acted outrageously with respect to plaintiff. And, State Farm does not question the legal sufficiency of that evidence.

■ While we agree with State Farm that the issue whether its conduct was willful and wanton should have been submitted for jury determination, we also agree with the

trial court that the finding that State Farm's conduct was outrageous necessarily implied that such conduct was willful and wanton under § 10–4–708(1.8). *See Barham v. Scalia,* 928 P.2d 1381, 1385 (Colo.App.1996) ("A claim based on outrageous conduct intrinsically contains issues concerning willful and wanton conduct.")

Hence, under these unique circumstances, the court committed no error in trebling the amount of damages awarded to plaintiff under her statutory breach of contract claim.

### III.

State Farm also asserts that all of the proceedings in the trial court were tainted by that court's erroneous action in providing to plaintiff's counsel documents containing information that was privileged, either because it reflected communications between State Farm and its attorney or because it was a part of its "work product." We agree that many of the documents that the court delivered to plaintiff reflected communications that might well be privileged under § 13–90–107(1)(b), C.R.S.1997, or protected under the work product doctrine. However, we conclude that State Farm has failed to demonstrate such prejudice resulting from that disclosure as would require a reversal of the judgment.

In response to pre-trial discovery requests, State Farm asserted that many of the documents whose production was requested contained privileged communications and objected to their production. All of the documents were submitted to the court for an examination. Thereafter, the court allowed plaintiff's counsel access to a number of documents, consisting of (1) letters between State Farm agents and counsel in which various facts are summarized; (2) approximately 40 pages of logs maintained by State Farm adjusters and supervisors in several of which there are references to conferences between the adjuster and counsel and a summary of the discussions in those conferences; and (3) billing statements from counsel.

State Farm asserts (an assertion that we will accept) that it did not learn of plaintiff's access to any of these documents until the trial of the cause, when plaintiff's counsel referred to one of the documents. That reference occurred during the cross-examination of State Farm's supervising adjuster.

This witness was referred to one of the log entries and was asked whether it was true that, on a specified date, one of State Farm's "agents" had recommended that a particular medical bill be paid. In response, the witness answered that it was State Farm's attorney that had made this recommendation.

Plaintiff's counsel made no further inquiry with respect to any conversation in which this recommendation was made. He did, however, establish that, while this bill had ultimately been paid, the payment was made a number of months later. In addition, he made reference in closing argument to the fact that State Farm took an inordinate amount of time, after receiving counsel's recommendation, to pay the bill.

■ Section 13–90–107(1)(b) renders privileged "any communication" made by a client to a lawyer and any "advice given thereon" by that lawyer. However, if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the privilege created by this statute nor the work product privilege protects communications from a lawyer to an insurance carrier. *National Farmers Union Property & Casualty Co. v. District Court,* 718 P.2d 1044 (Colo.1986).

■ Here, in objecting to the disclosure of the various documents, State Farm presented no evidence as to the role that the lawyer was playing at the time the recommendation to pay was made nor as to the circumstances surrounding that recommendation. Nevertheless, even if we assume that the identified communication from the lawyer was privileged, either because of the attorney-client privilege or the work product privilege, we conclude that there has been no showing of prejudice.

Of all the documents supplied to plaintiff that State Farm asserted was privileged only the single log entry was referred to during the trial. And, as the trial court noted, the fact that State Farm delayed paying the bill

in question for a number of months was admissible and could have been established without reference to the lawyer's advice. Indeed it was the witness, and not plaintiff's counsel, who first identified the recommendation to pay the bill as coming from State Farm's lawyer, rather than from one of its "agents."

Further, this was not the only instance in which the adjusting supervisor had, contrary to an internal recommendation, delayed in paying or had failed to pay a bill. In the other instances, however, the recommendations had come from the adjuster who was directly engaged in passing upon plaintiff's claims.

Finally, the bill in question was for only a nominal amount in comparison with plaintiff's total claim. And, it was, in fact, paid, while others went unpaid.

Considering all these circumstances, therefore, we conclude that the reference to this single statement by the lawyer, even if that statement should not have been disclosed, did not prejudice State Farm's cause before the jury. State Farm has not convinced us that, without this single disclosure, the result of the jury's deliberations would probably have been different or that its substantial rights were otherwise prejudicially affected. *See* C.R.C.P. 61; *Flanders Electric Motor Service, Inc. v. Davall Controls & Engineering,* 831 P.2d 492 (Colo.App.1992).

■ In reaching this conclusion, we recognize that, in some instances, a disclosure of privileged information can lead to prejudice, even though no improper evidence is presented to the factfinder. Prejudice may also occur if the opposing party is provided with information respecting the other party's theories or trial strategy that otherwise would not be disclosed. However, with the singular exception of the recommendation by counsel described above, State Farm has failed to describe any specific theory, tactic, or strategy that plaintiff's counsel learned of solely from the documents provided to him. And, we will not presume prejudice if none has been demonstrated. *See People v. Reali,* 895 P.2d 161 (Colo.App.1994) (even in criminal case, violation of attorney-client privilege will

not result in reversal, absent showing of specific prejudice).

We conclude, therefore, that any error committed by the trial court with respect to that court's discovery order was not prejudicial to State Farm.

### IV.

Defendant also argues that the award of damages on the bad faith claim should be overturned because it is unsupported by the evidence and because there existed juror misconduct. Again, we do not agree.

### A.

■ The jury instructions on damages for the bad faith claim limited the jury to an award for economic damages, and plaintiff was awarded $150,000 for this claim.

Plaintiff was entitled to damages for lost earnings, loss of future earnings, and diminished earning capacity as economic damages. *See CJI–Civ.3d* 25:6 (1989); *CJI–Civ.3d* 6:1 (1997 Supp.). We conclude that there exists sufficient evidence in the record to support the damage award.

Evidence was presented that plaintiff had accepted an employment offer before the accident and that she would have earned approximately $15,000 a year. However, because of the accident, plaintiff did not obtain this employment, and she had been unemployed since the 1992 accident.

In addition, there was sufficient expert medical testimony from which the jury might reasonably find that damages for plaintiff's lost earnings, loss of future earnings, and diminished earning capacity, as evidenced by her continuing unemployment, were the result of her financial inability to obtain the necessary medical and psychological treatment for successful re-entry into the workforce, which was caused by State Farm's improper refusal to pay for such treatment.

Given these considerations, we conclude that the amount of $150,000 represents a reasonable estimation of the amount of plaintiff's economic damages. *See Hauser v. Rose Health Care Systems,* 857 P.2d 524 (Colo. App.1993) (damages awarded may be an ap-

proximation, provided the fact of damages is certain and plaintiff introduces some evidence sufficient to permit a reasonable estimation).

## B.

█ State Farm also argues that the jury acted improperly by awarding plaintiff attorney fees as a part of her damage award for plaintiff's bad faith claim and that such juror misconduct mandates overturning this award. Its allegations of juror misconduct are grounded on information in affidavits by some jurors and testimony by the jury foreman that the damages awarded were to pay for plaintiff's attorney fees and on State Farm's assertion that such an award was not authorized.

The relevant rule is CRE 606(b), which provides that no juror may testify:

> concerning his mental processes in connection [with reaching the verdict].... Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received
>
> ....

CRE 606(b) thus prohibits inquiry into the deliberative processes of jurors. *Ravin v. Gambrell,* 788 P.2d 817 (Colo.1990).

Here, the affidavits clearly related to the mental processes of the jurors; they should not have been received or considered by the trial court; and in any case, they cannot be used to impeach the verdicts received.

Judgment affirmed.

MARQUEZ and TAUBMAN, JJ., concur.