Julie **MASSINGILL**, individually and as parent and next friend of Brian McGraw and Amber Massingill, minors; and Daniel **Massingill**, individually and as parent and next friend of Brian McGraw and Amber Massingill, minors, Plaintiffs–Appellants,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** Defendant–Appellee.

No. 06CA1054.

Colorado Court of Appeals, Div. II.

July 12, 2007.

Certiorari Denied Feb. 19, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

Paulsen & Wanebo, LLC, Randall J. Paulsen, Dennis B. Wanebo, Westminster, Colorado, for Plaintiffs–Appellants.

Levy, Morse & Wheeler, P.C., Marc R. Levy, Scott P. Landry, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this uninsured/ underinsured motorist (UM/UIM) insurance coverage dispute, plaintiffs, Julie Massingill and Daniel Massingill, individually and as parents and next friends of their children, Brian McGraw and Amber Massingill, appeal the summary judgment in favor of defendant, State Farm Mutual Automobile Insurance Company. The issues are whether an insurance company may deny UM/UIM coverage to a resident relative driver and resident relative passenger when the policy excludes the driver from coverage because of a poor driving record, and if so, whether the actual exclusion here is effective to preclude coverage. We conclude that an insurance company may exclude the driver and did so here, and that the insurer also may deny coverage for the resident relative passenger under these circumstances. Thus, we affirm the summary judgment, although we do so on grounds different from those relied upon by the trial court.

The following facts are undisputed. State Farm insured the Massingills through two separate automobile insurance policies. In September 2002, State Farm sent a letter to the Massingills informing them that their coverage would not be renewed for two vehicles, a 1992 Ford and a 2001 Dodge, because of Brian's poor driving record. However, the letter contained an "Exclusion Offer," which stated:

> You may continue your insurance coverage if you agree to exclude Brian McGraw. If a driver exclusion is added, we would not be liable for damages, losses, or claims arising out of the operation or use of an insured motor vehicle by the excluded person(s), whether or not such operation or use is with the expressed or implied permission of a person insured under the policy. This driver exclusion would be included in any subsequent transfer, reinstatement or renewal of your policies. Indicate agreement by signing below and return this notice prior to the effective date of nonrenewal.

Julie Massingill signed the offer and returned it to State Farm on September 20, 2002. She then obtained liability coverage for Brian on a third vehicle, a 1993 passenger car, through Superior Insurance Company. She rejected the UM/UIM coverage that was offered under that policy.

State Farm renewed the insurance policies, which included $100,000 per person UM/UIM coverage. The policy included coverage for "relatives" of Julie Massingill. "Relative" is defined in the policy as "any other person related to you [the named insured] by blood, marriage or adoption . . . who usually lives with you even if living temporarily elsewhere" (emphasis omitted). It is undisputed that Brian and Amber fit the definition of an "insured" under the policy as resident relatives. However, attached to the policy was a driver exclusion endorsement, which stated:

> This endorsement is part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement.
>
> . . . .
>
> IN CONSIDERATION OF THE PREMIUM CHARGED FOR <YOUR> POLICY IT IS AGREED WE SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF ANY KIND SHALL ATTACH TO U.S. FOR <BODILY INJURY, LOSS> OR DAMAGE UNDER ANY OF THE COVERAGES OF THE POLICY WHILE ANY MOTOR VEHICLE IS OPERATED BY ____.

The endorsement did not mention a specific driver, but the parties agree that the endorsement is part of the policy and applies to Brian.

Brian and Amber were injured in an automobile accident on March 30, 2003. Brian was driving the 1993 passenger car, insured by Superior, with Amber as the passenger, when a large sport utility vehicle (SUV) turned left in front of him.

The driver of the SUV was insured for liability coverage by another insurance company, which paid its per person policy limit of $50,000 to both Brian and Amber. Plaintiffs then submitted a claim to State Farm for underinsured motorist benefits.

State Farm denied plaintiffs' UM/UIM claims on the basis that the driver exclusion precluded claims under any coverage when Brian was driving any vehicle. Following State Farm's denial, plaintiffs commenced this action for breach of contract in denying the UM/UIM benefits and for bad faith.

State Farm moved for summary judgment, arguing that the driver exclusion precluded recovery and that coverage could also be denied under the "owned but not insured" exclusion of the policy. Plaintiffs responded that the driver exclusion was void as contrary to public policy, but even if it were not, it was ineffective to exclude Brian and Amber from UM/UIM coverage. Plaintiffs also argued that the "owned but not insured" exclusion was void as contrary to public policy.

Concluding that UM/UIM coverage was precluded under the "owned but not insured" exclusion of the policy, the trial court granted summary judgment. It did not address the other arguments. This appeal followed.

Plaintiffs assert the court erred in granting summary judgment in favor of State Farm. We disagree.

We review a summary judgment de novo. When, as here, there are no genuine issues of material fact, summary judgment is proper upon a showing that the moving party is entitled to judgment as a matter of law. *See* C.R.C.P. 56(c); *McCormick v. Union Pac. Res. Co.*, 14 P.3d 346, 348 (Colo.2000).

### I.  Public Policy and Statutory Authority for Driver Exclusion

■ Plaintiffs contend that, as resident relatives of the named insureds, Brian and Amber are insured under the policy's UM/UIM coverage. They assert that the driver exclusion contained in the policy is an attempt to dilute, condition, or limit statutorily mandated UM/UIM coverage, which violates public policy and, therefore, is void. State Farm does not deny that Brian and Amber are resident relatives. However, it argues that the driver exclusion operates to exclude them as "insureds" from all coverage under the policy because Brian was driving the vehicle. State Farm asserts that the exclusion is statutorily authorized and is not void. We agree with State Farm.

■ The interpretation of an insurance policy presents a question of law that we review de novo. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo.2002); *Farmers Alliance Mut. Ins. Co. v. Ho*, 68 P.3d 546, 548 (Colo.App.2002).

■ Insurance policies are contracts and must be construed to carry out the intent of the parties. The words and phrases in an insurance policy are to be given their plain, everyday meaning, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 17–18 (Colo.1990).

In construing a statute, our primary duty is to give effect to the intent of the General Assembly and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005). A statute should be read as a whole and should be construed to give consistent, harmonious, and sensible effect to all its parts. *Allely v. City of Evans*, 124 P.3d 911, 912–13 (Colo.App. 2005).

■ If an insurance policy dilutes, conditions, or limits statutorily mandated coverage, it is void and unenforceable. *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 173 (Colo. 2001); *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo.1990). "A policy that limits UM/UIM benefits under circumstances where the General Assembly intended for UM/UIM benefits to be recovered is invalid." *DeHerrera v. Sentry Ins. Co., supra*, 30 P.3d at 173.

UM/UIM coverage is meant to "assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." *DeHerrera v. Sentry Ins. Co., supra*, 30 P.3d at 174 (quoting Colo. Sess. Laws 1965, ch. 91, § 1 at 33). An insurer must offer UM/UIM coverage in an automobile policy, but the insured may reject such coverage in writing. Section 10–4–609, C.R.S.2006. When an insured elects to purchase such coverage, the insurer must provide benefits when an insured is "legally entitled to recover damages from owners or operators of uninsured motor vehicles." Section 10–4–609(1)(a), C.R.S.2006. This coverage also applies when the at-fault owner or operator is underinsured. Section 10–4–609(4), C.R.S.2006.

Nevertheless, named driver exclusions are permitted in motor vehicle insurance policies under Colo. Sess. Laws 1973, ch. 94, § 13–25–21 at 345 (subsequently codified as amended at § 10–4–721; repealed effective July 1, 2003)(the former § 10–4–721), and under § 10–4–630, C.R.S.2006.

The former § 10–4–721 provided:

(1) In any case where an insurer is authorized under this part 7 to cancel or refuse to renew or increase the premiums on an automobile liability insurance policy under which more than one person is insured because of the claim experience or driving record of one or more but less than all of the persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to contin-

ue or renew the insurance but to exclude from coverage, by name, the person whose claim experience or driving record would have justified the cancellation or nonrenewal. The premiums charged on any such policy excluding a named driver shall not reflect the claims, experience, or driving record of the excluded named driver. (2) With respect to any person excluded from coverage under this section, the policy may provide that the insurer shall not be liable for damages, losses, or claims arising out of this operation or use of the insured motor vehicle, whether or not such operation or use was with the express or implied permission of a person insured under the policy.

The current § 10–4–630 contains nearly identical language.

Here, the exclusion states that State Farm has "no liability or obligation of *any* kind" for "bodily injury, loss or damage under *any* of the coverages of the policy while *any* motor vehicle is operated" by Brian (emphasis supplied). This exclusion operates broadly to preclude UM/UIM coverage for Brian or Amber arising from the collision involved here. *See Lopez v. Dairyland Ins. Co.*, 890 P.2d 192, 195 (Colo.App.1994) (General Assembly has expressly and unambiguously authorized insurance companies to exclude UM/UIM coverage when a vehicle is operated by an excluded driver).

Contrary to plaintiffs' contention, this exclusion does not improperly dilute, condition, or limit statutorily mandated coverage. In *Principal Mutual Life Insurance Co. v. Progressive Mountain Insurance Co.*, 27 P.3d 343, 347 (Colo.2001), the supreme court concluded that the former § 10–4–721 could validly preclude recovery of personal injury protection benefits by a resident relative when the vehicle was being operated by her father, who was an excluded driver. The court stated:

The language of section 10–4–721 expresses a clear legislative intent to authorize an insurer to exclude from coverage certain drivers whose driving records would otherwise render the policy subject to cancellation, nonrenewal, or significant increase in premiums. *See Sersion v. Dairyland Ins.*

*Co.*, 757 P.2d 1169, 1170 (Colo.App.1988). The insurer may construct a policy that frees it from liability for damages, losses, or claims arising out of the operation of the motor vehicle by the excluded driver. *See Lopez v. Dairyland Ins. Co., [supra,* 890 P.2d at 196]; *State Farm Mut. Auto. Ins. Co. v. Graham,* 860 P.2d 566, 567 (Colo. App.1993).

Thus, the statute refutes plaintiffs' contention that the General Assembly intended for UM/UIM benefits to be available in circumstances where, as here, a vehicle is operated by an excluded driver. *Cf. DeHerrera v. Sentry Ins. Co., supra.* Therefore, we conclude the exclusion is not invalid. *See Sersion v. Dairyland Ins. Co., supra,* 757 P.2d at 1170 ("the application of [former § 10–4–721] cannot be limited or invalidated on public policy grounds").

Contrary to plaintiffs' further contention, it does not matter that Brian and Amber are resident relatives. The supreme court held in *Principal Mutual Life Insurance Co. v. Progressive Mountain Insurance Co., supra,* 27 P.3d at 345, that "when a named insured's policy expressly excludes coverage when a certain driver operates or uses a motor vehicle ... the named insured's resident relatives are not entitled to ... benefits for injuries arising out of the excluded driver's operation or use of the vehicle."

■ In addition, former § 10–4–721(1) states that an insurer may exclude a driver "from coverage, by name." The statute does not limit exclusion to any particular type of motor vehicle coverage and permits an insurance company to exclude someone "by name" because of his or her driving record. In the UM/UIM context, this language is significant because it permits an insurance company to exclude a *person* from coverage. Therefore, even if, as plaintiffs contend, UM/UIM coverage for resident relatives is personal under *DeHerrera v. Sentry Insurance Co., supra,* we conclude the statute allows the exclusion of a person, not simply a vehicle, from coverage.

■ The language of the UM/UIM statute also demonstrates that coverage for an excluded driver is not mandated. It states that

UM/UIM coverage must protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." Section 10–4–609(1). "This phrase ... means that insurers must provide UM/UIM coverage for the protection of *persons* insured under the liability policy that the insurer is issuing." *DeHerrera v. Sentry Ins. Co., supra,* 30 P.3d at 175 (quoting *Aetna Cas. & Sur. Co. v. McMichael,* 906 P.2d 92, 97 (Colo.1995)).

Here, it is undisputed that Brian was not insured under the liability provisions, and plaintiffs also do not dispute that an insurer may use the named driver exclusion to preclude liability coverage for a named driver. Thus, in this situation, State Farm was under no obligation to provide UM/UIM coverage to Brian because he was excluded from the liability provisions of the policy. Because State Farm was under no obligation to offer liability coverage to Brian, it follows that State Farm could also exclude him from UM/UIM coverage without violating public policy. Essentially, Brian is not an "insured person" within the meaning of the policy.

In so concluding, we recognize that UM/UIM coverage is designed to protect persons who are not "at fault" in an accident, and that the risks in insuring against uninsured and underinsured motorists are very different from those taken into account in the liability provisions of a policy. *See State Farm Mut. Auto. Ins. Co. v. Washington,* 641 A.2d 449, 452 (Del.1994) ("An auto insurer assumes two very different risks in terms of liability and uninsured/ underinsured motorist coverages. In the first instance, the experience, driving record and negligence of the insured driver defines the risk to the insurer. In the latter, the risk is defined by the negligence of the public at large."). Nevertheless, we perceive no reason why an insurance company can permissibly preclude all other coverage under an automobile policy using a named driver exclusion, but not UM/UIM coverage. Indeed, if an insurance company can preclude recovery of statutorily mandated personal injury protection benefits using a named driver exclusion, as in *Principal Mutual Life Insurance Co., v. Progressive Mountain Insurance Co., supra,* surely

it may do so when optional UM/UIM coverage is involved.

Nor is it unreasonable to allow an insurance company to exclude a driver with a poor driving record from UM/UIM coverage based on its assessment that such a driver is more likely to have an accident than a person with a good driving record.

The facts of this case are illustrative. The parties agree that Brian was between zero and forty percent at fault. Under plaintiffs' construction of the statute and the insurance policy, Brian would still be able to recover UM/UIM benefits even though he was as much as forty percent at fault. This is inconsistent with the General Assembly's purpose in enacting the driver exclusion statute, which allows insurers to avoid *all* risks associated with the driver excluded under the policy. *See Principal Mut. Life Ins. Co. v. Progressive Mountain Ins. Co., supra.*

Accordingly, we conclude that without running afoul of public policy, an insurer may exclude a named driver from *all* coverage, including UM/UIM coverage, while he or she is driving and that State Farm did so here by excluding Brian.

The exclusion of Brian also precludes any recovery by Amber. *See Principal Mut. Life Ins. Co. v. Progressive Mountain Ins. Co., supra,* 27 P.3d at 347.

## II. Effect of *DeHerrera* on Amber's Benefits

■■■ Plaintiffs nevertheless contend that *DeHerrera v. Sentry Insurance Co., supra,* mandates a different result, at least as to Amber, because she was merely a passenger. We disagree.

In *DeHerrera,* the supreme court discussed the nature of UM/UIM coverage. In that case, a resident relative of the named insured (her son) was operating an unlicensed off-road vehicle when he was struck by an underinsured pickup truck. The son was insured as a resident relative under the terms of the policy, but the policy only provided UM/UIM coverage if an insured was occupying a car or was a pedestrian. The insurer denied coverage under this exclusion

because at the time of the accident the son was operating a vehicle that was not a car.

However, the supreme court held that the UM/UIM coverage extended to the son even when operating the off-road vehicle, reasoning that UM/UIM coverage follows the person rather than a particular vehicle. The court concluded the limitation in the policy was contrary to public policy, stating that "UM/UIM insurance is designed to protect an innocent insured as if the person at fault had been insured for liability ... [and thus] an injured insured is covered by UM/UIM insurance '*whenever* or *wherever* bodily injury is inflicted upon him by the negligence of an uninsured motorist.'" *DeHerrera v. Sentry Ins. Co., supra,* 30 P.3d at 175 (quoting *Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229, 238 (Fla.1971)).

Relying upon this language in *DeHerrera,* plaintiffs argue that State Farm may not exclude Amber as an insured even when an excluded driver, like Brian, is driving the vehicle. This argument is plausible because the supreme court noted in *DeHerrera* that the "UM/UIM statute contains no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of the injury." *DeHerrera v. Sentry Ins. Co., supra,* 30 P.3d at 175. In addition, the former § 10–4–721(1) only permitted an insurance company to offer to "exclude from coverage, by name, the person" who has a poor driving record. While the driver exclusion statute clearly allows an insurance company to exclude the driver from coverage, there is no language in the statute that would allow exclusion of an innocent passenger.

Plaintiffs also point out that under *DeHerrera,* UM/UIM coverage follows the person, and they argue that Amber had insurance to protect her from negligent motorists who failed to purchase sufficient liability insurance, regardless of what vehicle she was riding in or who was driving a particular vehicle. Plaintiffs maintain that the intent of the statute is to place Amber in the same position as if the "tortfeasor had been insured for liability coverage to the same extent that [she] was covered for UM/UIM benefits." *DeHerrera v. Sentry Ins. Co., supra,* 30 P.3d at 174.

Given *DeHerrera's* emphasis on the public policy of protecting innocent insureds under UM/UIM coverage, there is some merit to plaintiffs' assertion that allowing the exclusion as to Amber could allow State Farm to dilute, condition, or limit statutorily mandated coverage. Nevertheless, we conclude that *DeHerrera* is distinguishable, because the court there addressed the issue of whether an insurer could deny an insured UM/UIM benefits based on the *type of vehicle* the insured was occupying at the time of the accident. The issue here is whether an insurer may deny coverage based on *who is operating* the vehicle at the time of the accident. In *DeHerrera,* the supreme court noted that the UM/UIM statute contained "no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of injury." *DeHerrera v. Sentry Ins. Co., supra,* 30 P.3d at 175. The supreme court declined to deny UM/UIM coverage when there was no statutory authorization to do so.

We also acknowledge that plaintiffs' contention is supported by case law from other states. In *Phoenix Indemnity Insurance Co. v. Pulis,* 129 N.M. 395, 402–03, 9 P.3d 639, 646–47 (2000), the New Mexico Supreme Court held that an innocent passenger was entitled to recover UM benefits even when the vehicle was being driven by a driver who was excluded from coverage under the policy. In a special concurrence, Justice Baca employed an analytical framework similar to that employed by the supreme court in *DeHerrera,* stating:

> With regard to ... UM coverage [for resident relatives] we have stated, "There is no requirement in the statute that the insured have any relation, at the time of the accident, with any vehicle he owns and that is insured with the insurer. *The uninsured motorists protection covers the insured and the family members while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch.*" I fail to see how these broad protections could be so easily abrogated for the entire family merely by signing a driver exclusion clause that relates to only one driver.

[The passenger] was merely riding in an uninsured vehicle, that happened to be driven by an excluded driver under the same policy, when an accident occurred, and he sought compensation for his injuries as a [resident relative] insured. *Since UM coverage is personal and follows the individual, and is not dependent on the excluded driver, this is a situation that UM coverage was designed to address.*

*Phoenix Indem. Ins. Co. v. Pulis, supra,* 129 N.M. at 404, 9 P.3d at 648 (emphasis supplied) (citation omitted) (quoting *Chavez v. State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 330, 533 P.2d 100, 103 (1975)).

Here, however, former § 10–4–721 specifically permits an insurer to exclude a named driver from coverage under the policy, and the Colorado cases interpreting the driver exclusion statute have held that an insurer may avoid *any* liability arising out of the operation of a motor vehicle by the excluded driver. *See Principal Mut. Life Ins. Co. v. Progressive Mountain Ins. Co., supra,* 27 P.3d at 347 ("insurer may construct a policy that frees it from liability . . . arising out of the operation of the motor vehicle by the excluded driver"); *Lopez v. Dairyland Ins. Co., supra,* 890 P.2d at 195 (exclusion effective to deny coverage of "any kind" including UM/UIM); *Sersion v. Dairyland Ins. Co., supra,* 757 P.2d at 1171 (statute authorizes "an insurer to exclude from coverage all liability arising from the use of an automobile by certain named drivers"); *see also Phoenix Indem. Ins. Co. v. Pulis, supra,* 129 N.M. at 400, 9 P.3d at 644 (cited with approval in *Principal Mutual* ) ("named-driver exclusions . . . are applicable to *all auto coverage,* including liability and UM coverage" (emphasis supplied) ).

Thus, while we acknowledge language in *DeHerrera* supporting plaintiffs' contention that Amber should enjoy UM/UIM protection, it is well settled that the driver exclusion can only be voided if it dilutes, conditions, or limits statutorily mandated coverage, and this occurs only when a policy "limits UM/UIM benefits under circumstances where the General Assembly intended for UM/UIM benefits to be recovered." *DeHerrera v. Sentry Ins. Co.,*

*supra,* 30 P.3d at 173. The driver exclusion statute demonstrates the General Assembly's intent that UM/UIM benefits are not recoverable when an excluded driver is operating the vehicle. Such is the case here.

### III. Conflict Between Offer and Endorsement

Plaintiffs next assert that even if State Farm may exclude Brian and Amber from UM/UIM coverage, then its attempt to do so was ineffective in this case because the offer and endorsement language conflict and create an ambiguity that must be construed against State Farm. Plaintiffs also argue that the language of the "offer" is more specific and must control. Plaintiffs contend that the "Exclusion Offer" only operates to exclude coverage when Brian is operating an "insured motor vehicle." They argue this term is more specific than the endorsement or conflicts with the endorsement, which provides that there is no coverage "under any of the coverages of the policy while any motor vehicle is operated by" Brian. Even assuming the language of the "Exclusion Offer" is controlling because it is more specific and conflicts with the endorsement, we conclude that such language is sufficient to preclude UM/UIM coverage in this situation.

Ambiguous language in insurance contracts is construed against the insurer. However, unambiguous contracts should be enforced according to their terms. *Kane v. Royal Ins. Co.,* 768 P.2d 678, 680 (Colo.1989). A policy term is ambiguous if it is reasonably susceptible of more than one meaning. *Terranova v. State Farm Mut. Auto. Ins. Co., supra,* 800 P.2d at 60.

"Exclusionary clauses designed to except particular conduct or situations from general insurance coverage provisions must be drafted in clear and specific language. To benefit from an exclusionary clause, an insurer must establish that the exclusion applies and is not subject to any other reasonable interpretation." *Prudential Prop. & Cas. Ins. Co. v. LaRose,* 919 P.2d 915, 917 (Colo.App.1996).

■ When interpreting policy provisions, our construction must be fair, natural, and reasonable rather than strained and strictly technical. *Pub. Serv. Co. v. Wallis & Cos.*, 986 P.2d 924, 939 (Colo.1999).

■ It is a basic principle of contract interpretation that a more specific provision controls the effect of more general provisions in a contract. *E–470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798, 801 (Colo.App.2001), *aff'd*, 49 P.3d 1151 (Colo.2002).

Here, the "Exclusion Offer" provided in pertinent part:

> You may continue your insurance coverage if you agree to exclude Brian McGraw. If a driver exclusion is added, we would not be liable for damages, losses, or claims arising out of the operation or use of an insured motor vehicle by the excluded person(s), whether or not such operation or use is with the expressed or implied permission of a person insured under the policy.

The "Exclusion Endorsement" provides:

> IN CONSIDERATION OF THE PREMIUM CHARGED FOR <YOUR> POLICY IT IS AGREED WE SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF ANY KIND SHALL ATTACH TO U.S. FOR <BODILY INJURY, LOSS> OR DAMAGE UNDER ANY OF THE COVERAGES OF THE POLICY WHILE ANY MOTOR VEHICLE IS OPERATED BY ____.

Here, plaintiffs concede that the language of the "Exclusion Offer" is sufficient to exclude Brian from UM/UIM coverage while driving a vehicle that is insured under the State Farm policy. In other words, they concede that if Brian had been driving either of the two insured vehicles in this accident, State Farm could appropriately deny coverage. Plaintiffs nevertheless urge us to read the language of the "Exclusion Offer" only to preclude coverage while the driver was operating an "insured motor vehicle." But this interpretation would mean that Brian would have no coverage (liability, personal injury protection, and UM/UIM) while he was driving one of the described vehicles in the State Farm policy, and he would have no liability

coverage for any other vehicle he operated except the 1993 passenger car, which Superior Insurance covered through a separate policy, yet State Farm would be required to provide UM/UIM coverage to Brian while he was driving any other vehicle.

We cannot subscribe to an interpretation of the policy that would exclude coverage while Brian was driving an insured vehicle but require coverage while he was driving any other vehicle. In fact, the New Mexico court rejected just such an argument: "It would be illogical to allow State Farm to exclude a certain driver from uninsured motorist coverage when he is operating an *insured* vehicle, and at the same time require it to cover that person while operating an *uninsured* vehicle." *Moore v. State Farm Mut. Auto. Ins. Co.*, 119 N.M. 122, 125, 888 P.2d 1004, 1007 (Ct.App.1994).

We agree with the New Mexico court that it is unreasonable for an insured to expect UM/UIM coverage for an excluded driver, such as Brian, while he is driving any other vehicle, even though the insured concedes the excluded driver would not have such coverage while driving a vehicle that is expressly insured under the terms of the policy. *See Shelter Mut. Ins. Co. v. Breit*, 908 P.2d 1149, 1152 (Colo.App.1995) (stating that insured's expectations that the policy would allow stacking of benefits "simply would not be reasonable").

■ For the same reasons, we reject plaintiffs' similar contention that former § 10–4–721(2) does not permit an insurer to exclude UM/UIM coverage because the language only refers to claims arising out of the "operation or use of the insured motor vehicle." Plaintiffs' interpretation would lead to an absurd result because it would allow an insurer to deny coverage if the driver were operating an insured vehicle, but would require coverage if he or she were operating any other vehicle. *See Harwood v. Senate Majority Fund, LLC*, 141 P.3d 962, 964 (Colo.App.2006) ("Any interpretation that creates an unreasonable or absurd result should be avoided.").

Accordingly, we affirm the summary judgment as to State Farm's denial of UM/UIM coverage for Brian and Amber.

Given this disposition, we need not address the remaining contentions of the parties.

The judgment is affirmed.

Judge ROTHENBERG and Judge ROMÁN concur.