Gomcindo DeHERRERA,
Plaintiff–Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Defendant–Appellee.

No. 08CA0301.

Colorado Court of Appeals,
Div. III.

March 5, 2009.

McCormick & Murphy, P.C., Kirk R. McCormick, Colorado Springs, Colorado; Daniel G. Kay, Colorado Springs, Colorado, for Plaintiff–Appellant.

Jones, Waters & Geislinger, LLC, Michael R. Waters, Colorado Springs, Colorado, for Defendant–Appellee.

Opinion by Judge LOEB.

Plaintiff insured, Gomcindo DeHerrera, appeals the district court's summary judgment in favor of defendant, American Family Mutual Insurance Company. We affirm.

I. Background and Procedural History

The essential facts of the case are not in dispute. On September 24, 2004, DeHerrera, an American Family policy holder, was injured in an automobile accident with Carroll Worm. American Family paid $5,000 to various medical providers for DeHerrera's medical expenses. DeHerrera's automobile insurance policy included an express subrogation clause, which read:

> Our Recovery Rights. If we pay under this policy, we are entitled to all the rights of recovery of the person to whom payment was made against another. That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to harm our rights.

> When we pay damages under this policy to a person who also collects from another, the amount collected from the other shall be repaid to us to the extent of our payment.

DeHerrera pursued a personal injury claim against Worm, who was insured by Farmers Insurance. On December 30, 2004, American Family sent a letter to Farmers requesting subrogation for medical payments made on behalf of DeHerrera. On April 21, 2005, American Family sent another letter to Farmers stating its intention to pursue its subrogation rights and enclosing documentation of DeHerrera's medical expenses. On April 27, 2005, Farmers responded to American Family in a letter, copied to DeHerrera's attorney, acknowledging American Family's $5,000 subrogation demand and directing American Family to contact DeHerrera's attorney because Farmers had not yet entered into settlement negotiations with DeHerrera in connection with his claim against Worm.

On October 18, 2005, DeHerrera settled his personal injury claim against Worm for $55,000. On November 1, 2005, American Family sent another letter to Farmers regarding its subrogation demand. On November 4, 2005, Farmers responded in a letter stating that the case had been settled, that DeHerrera's attorney had been paid the full amount, and that there was a full and final release signed by DeHerrera. That release, dated October 18, 2005 included a clause that read:

> I agree to reimburse and indemnify all released parties of any amounts which any insurance carriers, government entities, hospitals, or other persons or organizations may recover from them in reimbursement for amounts paid to me or on my behalf as a result of this accident by way of CONTRIBUTION, SUBROGATION, INDEMNITY or OTHERWISE.

(Emphasis in original.)

Thereafter, in response to American Family's claiming a lien of $5,000 on the settlement proceeds, DeHerrera filed this action to claim possession of the subrogated amount, and he placed $5,000 in the court registry. Through subsequent amendment of his complaint, DeHerrera also asserted claims for bad faith breach of insurance contract and outrageous conduct based on American Family's request for reimbursement of the $5,000 in medical payments.

American Family filed a motion for summary judgment, seeking to obtain dismissal of all of DeHerrera's claims. After briefing, the district court granted American Family's motion. The district court concluded the insurance policy here expressly provided for a subrogation right that allowed American Family to collect amounts paid as medical costs against the tort feasor. The district court went on to conclude that even without the specific contract clause, American Family had an equitable subrogation right. Next, the court concluded that the anti-subrogation rule did not apply because American Family was asserting a subrogation claim against "a tort feasor and not an American Family insured." The district court also rejected DeHerrera's argument that the purchase of medical payments coverage did not convey a benefit when there was subrogation, because "a benefit of medical pay coverage entails an ability to seek medical treatment and get medical treatment paid regardless of whether a tort feasor will pay the amount at a later date." Finally, the district court concluded the "make whole" doctrine was not applicable because the case law relied on by DeHerrera was based on Colorado's repealed No–Fault Act. As a result, the district court entered summary judgment for American Family and ordered the funds held in the court registry be paid to American Family. This appeal followed.

## II. Standard of Review

Our review of the grant of summary judgment is de novo. *See A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 865 (Colo.2005). When, as here, there are no genuine issues of material fact, summary judgment is proper upon a showing that the moving party is entitled to judgment as a matter of law. *See* C.R.C.P. 56(c); *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 820 (Colo.App.2007).

The interpretation of an insurance policy presents a question of law we review de novo. *Massingill*, 176 P.3d at 820. Insurance policies are contracts and must be construed to carry out the intent of the parties. *Id.* The words and phrases in an insurance policy are to be given their plain, every-

day meaning, and strained constructions should be avoided. *Id.*

### III. Subrogation

DeHerrera contends that the district court erred by concluding that American Family was entitled to recover the medical payments it paid on his behalf from the settlement he received from Worm and Farmers. We disagree.

 Under the doctrine of equitable subrogation, when an insurer has paid its insured for a loss caused by a third party, it may seek recovery from the third party. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 833 (Colo.2004). In such an action, the insurer "stand[s] in the shoes" of its insured. *Id.* at 834 (citing *A. Copeland Enters., Inc. v. Slidell Mem'l Hosp.*, 657 So.2d 1292, 1298–99 (La.1995)).

 "Subrogation serves the purpose of limiting the possibility of a double recovery by the insured, and secures 'the ultimate discharge of the debt by the one who in equity and good conscience ought to pay it.'" *W. Cas. & Sur. Co. v. Bowling*, 39 Colo.App. 357, 359, 565 P.2d 970, 971 (1977) (quoting *DeCespedes v. Prudence Mut. Cas. Co.*, 193 So.2d 224, 227 (Fla.Dist.Ct.App.1966), *aff'd*, 202 So.2d 561 (Fla.1967)).

 Medical payments subrogation clauses in insurance contracts are generally enforceable. *See Bowling*, 39 Colo.App. at 359, 565 P.2d at 971.

#### A. Payment to Medical Providers

 First, DeHerrera contends that American Family has no right of subrogation under the insurance policy because it made payments directly to DeHerrera's medical providers instead of to DeHerrera himself. We are not persuaded.

The insurance policy states that if American Family pays under the policy, it is "entitled to all the rights of recovery *of the person to whom payment was made* against another." (Emphasis added.) DeHerrera argues that this language shows American Family can only be subrogated to the person to whom payments were made, in this case,

DeHerrera's medical providers, not DeHerrera himself. DeHerrera reads the policy as providing that the only amounts which would be subject to subrogation would be those amounts paid directly to DeHerrera, as the insured, and not those paid to third parties on his behalf. Thus, according to DeHerrera, to preserve its rights, American Family would be forced to issue funds to the insured for use in payment of medical service providers. And under this interpretation, if the insurer paid those claims directly to the third-party medical providers, it would void or eliminate its ability to recover under the subrogation provision of the policy. We reject this analysis.

The clear intent of the language of the policy itself is that American Family, after paying the loss on behalf of an insured, has the right to recover the loss from the tortfeasor, and American Family could require reimbursement from the insured out of any settlement that duplicated payments American Family had paid to the insured. Because American Family paid DeHerrera's medical expenses, once DeHerrera settled his case with Farmers Insurance, American Family was entitled to be reimbursed for the medical payments it paid to DeHerrera's medical providers. American Family's subrogation rights are contractually triggered when it pays for damages such as medical payments to the insured or to the insured's provider. In our view, DeHerrera's reading of the policy language is hypertechnical and does not give credit to its plain meaning. *See Massingill*, 176 P.3d at 825 ("When interpreting policy provisions, our construction must be fair, natural, and reasonable rather than strained and strictly technical."). We will not countenance a strained construction of the policy's language in order to avoid what we perceive to be plain rights to subrogation. *See id.* at 820.

Contrary to DeHerrera's argument, payments to medical providers who provide services directly to an insured are to be treated for subrogation purposes as if the payments were made to the insured. The insured is the direct beneficiary of those payments. If we were to follow DeHerrera's logic, the payments to the medical providers should not

be counted against the $5,000 medical coverage benefit for which he bargained. In essence, DeHerrera's view requires that the payments be made to DeHerrera or not at all, and we reject such an interpretation.

Furthermore, by executing the release in his case against Worm, DeHerrera agreed and acknowledged that American Family's equitable subrogation rights, as well as its subrogation rights under the policy, would be honored. DeHerrera cannot accept the benefits of the policy's coverage and at the same time reject the subrogation rights that the coverage afforded American Family.

Accordingly, we conclude that the subrogation clause contained in the insurance contract between DeHerrera and American Family is unambiguous and that under that clause, American Family was entitled to recover the $5,000 in medical expenses that it paid to medical providers on behalf of DeHerrera from the proceeds of the settlement entered into among DeHerrera, Worm, and Farmers.

### B. Anti-subrogation Rule

DeHerrera next contends that if he is required to reimburse American Family for payment of his medical expenses, he will not have received a benefit from the premium he paid for the medical payments coverage. Again, we disagree.

An insurer generally has no right of subrogation against its own insured. *Continental Divide Ins. Co. v. W. Skies Mgmt., Inc.,* 107 P.3d 1145, 1148 (Colo.App.2004). Under the anti-subrogation rule, an insurer may not seek recovery against its insured on a claim arising from the risk for which the insured was covered. *Id.* This rule serves two purposes: (1) it prevents the insurer from passing the loss back to its insured, an act that would avoid the coverage that the insured had purchased; and (2) it guards against conflicts of interest that might affect the insurer's incentive to provide a vigorous defense for its insured. *Id.* While we acknowledge the consistent support for the general principles underlying the anti-subrogation rule, we are not persuaded that application of the rule is warranted in this case.

In holding that the district court did not err in allowing subrogation for American Family here (whether viewed as equitable or contractual), we are careful to distinguish the facts of this case from the usual circumstances governed by the anti-subrogation rule, where to allow subrogation would permit an insurer, in effect, to pass the incidence of the loss from itself to its own insured and thus avoid the coverage which its insured purchased. Here, American Family notified Farmers Insurance of its intent to pursue subrogation for payment of DeHerrera's medical expenses; DeHerrera's attorney was aware of American Family's subrogation request; and upon settlement, DeHerrera agreed to "reimburse and indemnify all released parties of any amounts which any insurance carriers ... may recover from them in reimbursement for amounts paid to me or on my behalf as a result of this accident by way of ... subrogation."

Allowing an insurer to seek reimbursement for medical payments from an insured does not, as DeHerrera argues, make medical payments coverage illusory. The coverage permits the insured to gain speedy reimbursement for medical expenses incurred as a result of an automobile collision without regard to the insured's fault. It also assures coverage when the insured is involved in an accident with an uninsured or underinsured driver. DeHerrera paid for the coverages stated in the policy, subject to the conditions stated in the policy. Benefits here are payable subject to any number of contingencies, such as types of loss, extent of losses, whether the insured is at fault, whether third parties at fault have insurance, and what limits third parties have on their liability coverages.

We note that American Family's subrogation rights do not pertain to all circumstances. For example, if the accident had been DeHerrera's fault, he would not owe American Family the amount of the medical payments made on his behalf, and American Family would have been barred from seeking reimbursement. The benefit here is that the insured is guaranteed payment for medical expenses arising from a motor vehicle accident, up to a stated limit, regardless of fault.

This is a valuable benefit, despite the fact that in certain cases it does not serve to increase an insured's net recovery over what that recovery would have been in its absence. Thus, this is not a case where benefits are illusory.

Finally, DeHerrera was paid by Farmers, and that payment included American Family's subrogated amount, which both DeHerrera and Farmers acknowledged.

### C. "Make Whole" Doctrine

Relying on *Marquez v. Prudential Property & Casualty Insurance Co.*, 620 P.2d 29 (Colo.1980), DeHerrera contends that the district court erred by allowing subrogation because he has not been made whole by the settlement. We reject DeHerrera's argument because it is based on case law interpreting now-repealed versions of the former Colorado Auto Accident Reparations Act (No–Fault Act), Ch. 94, sec. 1, §§ 13–25–1 to –23, 1973 Colo. Sess. Laws 334–45 (formerly codified as amended at §§ 10–4–701 to –726; repealed effective July 1, 2003, Ch. 189, sec. 1, § 10–4–726, 2002 Colo. Sess. Laws 649).

Other than in that context, DeHerrera has not cited any Colorado cases, nor have we found any, that hold the insurer has no right to subrogation unless the insured was made whole by the underlying settlement. In our view, such a rule would not comport with the policy of encouraging the settlement of lawsuits. *Colo. Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo.1992) (the public and judicial policies in Colorado favor the settlement of disputes).

### D. Uninsured Motorist Benefits

To the extent DeHerrera contends the underinsured motorist provisions in the insurance contract do not support subrogation, we decline to address the issue because it was raised for the first time in DeHerrera's reply brief. *Barrett v. Inv. Mgmt. Consultants, Ltd.*, 190 P.3d 800, 805 (Colo.App. 2008).

### E. Conclusion

In light of our conclusion that, pursuant to the insurance policy, American Family has a right to recover the $5,000 in medical payments it made on behalf of DeHerrera, we likewise conclude that the trial court did not err in entering summary judgment in American Family's favor.

### IV. Outrageous Conduct and Bad Faith Claims

DeHerrera contends the district court erred by granting summary judgment dismissing his outrageous conduct and bad faith breach of insurance contract claims. Although the court did not explicitly reference those claims in its order, American Family's motion sought summary judgment on those claims, the parties briefed the issue both in the district court and on appeal, and the parties agree the court's order effectively granted summary judgment on those claims. We discern no error in the court's ruling.

For an insured to prevail on a bad faith breach of contract claim against the insurer, the insured must establish that the insurer acted unreasonably and with knowledge of or reckless disregard of its unreasonableness. *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo.1997). A claim of bad faith involves an insurance company refusing to make or delaying payments owed directly to its insured under a first-party policy such as life, health, disability, property, fire, or no-fault auto insurance. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo.2004).

A claim based upon outrageous conduct requires proof that the conduct was " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 129 (Colo. App.1998) (quoting *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo.1988)). Moreover, it requires the conduct be undertaken recklessly or with an intent to cause the plaintiff severe emotional distress. *Id.*

Here, American Family could not have acted with knowledge of reckless disre-

gard of unreasonableness because the district court properly concluded it acted in compliance with established law and the terms of the insurance contract by seeking subrogation and reimbursement of the $5,000 in medical payments. For the same reason, American Family's conduct could not be considered so outrageous that it went beyond the bounds of decency. Therefore, we conclude the court properly entered summary judgment on the claims for outrageous conduct and bad faith breach of insurance contract.

## V. Third Motion to Amend Complaint

DeHerrera contends the district court erred by not granting his third motion to amend his complaint, which sought to add a claim under the Colorado Consumer Protection Act. Under the circumstances of this case, we treat the absence of a ruling on DeHerrera's motion, in light of the grant of summary judgment, as a denial of his motion to amend his complaint, *see Bd. of County Comm'rs v. Kobobel*, 74 P.3d 401, 404 (Colo. App.2002), and we conclude the district court did not err in denying the requested amendment.

■■■■■ "[T]he decision whether to grant a motion to amend is committed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Colo. Dep't of Pub. Health & Env't v. Bethell*, 60 P.3d 779, 787 (Colo.App.2002). An abuse of discretion occurs where a court's decision is manifestly arbitrary, unreasonable, or unfair. *LaBerenz v. Am. Family Mut. Ins. Co.*, 181 P.3d 328, 333 (Colo.App.2007). " 'To say that a court has discretion in resolving [an] issue means that it has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other.' " *People v. Crow*, 789 P.2d 1104, 1106 (Colo.1990)(quoting *People v. Milton*, 732 P.2d 1199, 1207 (Colo. 1987)).

C.R.C.P. 15(a) provides in pertinent part: A party may amend his pleading once as a matter of course at any time before a responsive pleading is filed or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it any time within twenty days after it is filed. Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

C.R.C.P. 16(b)(8) provides: "No later than 120 days after the case is at issue, all motions to amend pleadings and add additional parties to the case shall be filed."

■■■■ Here, the record shows that DeHerrera filed his third motion to amend his complaint on November 23, 2007. In accordance with the precept that leave should be freely given when justice so requires, we give DeHerrera the benefit of the doubt and, for purposes of C.R.C.P. 16(b)(8), calculate 120 days from the date the last amended answer to the second amended complaint was filed by American Family on October 12, 2006. Thus, at the latest, the case was at issue by October 12, 2006, over a year prior to the filing of DeHerrera's third motion to amend his complaint, on November 29, 2007, and was thus well beyond the 120–day time limit in C.R.C.P. 16(b)(8). Furthermore, DeHerrera's previous two motions to amend his complaint were granted by the district court, and his third motion to amend was filed several years into the case, after briefing had already been completed on the summary judgment motion. Under these circumstances, we cannot say the district court abused its discretion by not granting DeHerrera's third motion to amend his complaint.

## VI. Supplemental Authority

Finally, we comment briefly on the Submission of Supplemental Authority (Submission) filed by DeHerrera in this appeal on December 11, 2008, almost three months after briefing had been completed. DeHerrera's Submission was three and one-half pages long and contained citations to thirty-eight cases, eighteen of which were from states other than Colorado, and all but one of which were decided well before this appeal was briefed (including some cases that were decades old, going back to the 1960s). At oral argument, counsel for DeHerrera conceded that there was no reason why all but

one of the supplemental case citations could not have been included somewhere in DeHerrera's briefs on appeal. Further, none of the supplemental citations identified the issue on appeal to which such citation pertained.

In our view, DeHerrera's Submission was inconsistent with both the letter and spirit of C.A.R. 28(j), which provides:

If pertinent and significant new authority comes to a party's attention after the party's brief has been filed a party may promptly advise the court by notice, with a copy to all parties, setting forth the citation. The notice must state without argument the issue to which the supplemental citation pertains.

For future guidance, we caution counsel that any notice of supplemental authority filed in an appeal should comply with the dictates of C.A.R. 28(j) or be subject to being stricken by the court.

The judgment is affirmed.

Judge DAILEY and Judge MILLER concur.