2013 CO 14

**MOUNTAIN STATES MUTUAL CASUALTY COMPANY,**
Petitioner

v.

Christopher ROINESTAD and
Gerald Fitz–Gerald,

and

Tim Kirkpatrick, d/b/a Hog's Breath
Saloon & Restaurant
Respondents.

**Supreme Court Case No. 10SC853**

Supreme Court of Colorado.

February 25, 2013

Rehearing Denied March 18, 2013.

Attorneys for Petitioner: Wilson Elser Moskowitz Edelman & Dicker LLP, Joseph F. Bermudez, Jessica C. Collier, Denver, Colorado.

Attorneys for Respondents Christopher Roinestad and Gerald Fitz–Gerald: Killian & Davis, P.C., J. Keith Killian, Damon Davis, Grand Junction, Colorado.

No appearance by or on behalf of Tim Kirkpatrick.

Attorneys for Amicus Curiae The Colorado Trial Lawyers Association: Roberts Levin Rosenberg, P.C., Bradley A. Levin, Denver, Colorado.

Leventhal, Brown & Puga, P.C., David P. Mason, Denver, Colorado.

Attorneys for Amicus Curiae Complex Insurance Claims Litigation Association: Springer & Steinberg, P.C., JoAnne M. Zboyan, Denver, Colorado.

Attorneys for Amicus Curiae United Policyholders: Reed Smith LLP, James M. Davis, Chicago, IL.

JUSTICE EID delivered the Opinion of the Court.

¶ 1 Respondents Christopher Roinestad and Gerald Fitz–Gerald were overcome by poisonous hydrogen sulfide gas while cleaning a large grease clog in a sewer near the Hog's Breath Saloon & Restaurant ("Hog's Breath"). The district court concluded that Hog's Breath caused respondents' injuries by dumping substantial amounts of cooking grease into the sewer, thereby creating a five- to eight-foot grease clog and consequent build-up of hydrogen sulfide gas. On summary judgment, the district court found Hog's Breath liable under theories of negligence and off-premises liability, and entered a damage award in respondents' favor.

¶ 2 Hog's Breath carried a commercial general liability policy issued by Petitioner Mountain States Mutual Casualty Company ("Mountain States"), which sought a ruling that it had no obligation to indemnify Hog's Breath. It argued that Hog's Breath's conduct fell within the policy's pollution exclusion clause, which excluded coverage for bodily injury arising out of the discharge of pollutants from the premises of an insured. The insurance policy defined pollutants as any solid, liquid, gaseous, or thermal irritant or contaminant, or waste. The district court agreed with Mountain States, concluding that the pollution exclusion clause was unambiguous and that the dumping of substantial amounts of cooking grease into the sewer constituted a discharge of a pollutant under the policy's pollution exclusion clause.

¶ 3 The court of appeals reversed. It held that that the terms of the pollution exclusion clause were ambiguous and that its application to cooking grease a common everyday waste product—could lead to absurd results and negate essential coverage. *Roinestad v. Kirkpatrick*, —— P.3d ——, —— (Colo.App. 2010) (selected for official publication).

¶ 4 We now reverse. While we are mindful of the concerns expressed by the court of appeals, we find them inapplicable here. In this case, the restaurant discharged enough cooking grease into the sewer system to create a five- to eight-foot clog that led to a dangerous buildup of toxic gas—conduct that violated a city ordinance prohibiting the discharge of a pollutant in an amount that creates an obstruction to the sewer flow. We agree with the district court that, under the circumstances of this case, the discharge of cooking grease amounted to the discharge of a pollutant. Accordingly, we conclude that the pollution exclusion clause bars coverage in this case.

## I.

¶ 5 On October 1, 2003, respondents Christopher Roinestad and Gerald Fitz–Gerald were working on the sewer system in La Junta when they discovered a grease clog in a manhole near Hog's Breath, a sole proprietorship run by Tim Kirkpatrick. Fitz–Gerald attempted to clean the clog by inserting a water jet tool down the manhole and was overcome by hydrogen sulfide gas [1] in the process. He lost consciousness and fell into the manhole. Roinestad attempted to rescue Fitz–Gerald, but was also overcome by the hydrogen sulfide gas. Both men suffered injuries from the hydrogen sulfide exposure.

¶ 6 Post-accident investigations revealed grease approximately five- to eight-feet deep in the space beneath the manhole adjacent to Hog's Breath. In addition, there were large amounts of cooking oil on the ground around a sewer cleanout on the property where Hog's Breath was located. The sewer cleanout drained directly toward the manhole where the grease clog was discovered, and the grease in the manhole was consistent with the grease discovered at the cleanout. No other commercial entity's sewer fed into the sewer system upstream of the Hog's Breath, which suggested that no other business had contributed to the grease found in the manhole near the Hog's Breath. In support of this conclusion, a Hog's Breath employee testified that Kirkpatrick instructed Hog's Breath employees to dump greasy water down the cleanout—which employees did regularly.

¶ 7 Respondents sued Kirkpatrick (d/b/a Hog's Breath) on September 29, 2005, alleging negligence, negligence per se, and off-premises liability. The negligence per se claims were based on several La Junta city ordinances in effect at the time, including city ordinance 13.12.250(b), entitled "Restricted Discharges to Sewers," which says,

(b) Substances which are prohibited are:

(3) Solid or viscous pollutants [2] in amounts which will cause obstruction to the flow in the [Publicly Owned Treatment Works ("POTW") ] or other interference with the operation of the POTW . . .

(5) Pollutants which result in the presence of toxic gases, vapor or fumes within the POTW in a quantity that may cause acute worker health and safety problems.[3]

¶ 8 After respondents filed the lawsuit, Kirkpatrick notified his liability insurer, Mountain States, who had renewed a commercial general liability policy (the "insurance policy" or "policy") issued to Hog's Breath in 2003 that contained a pollution exclusion clause stating,

This insurance does not apply to: . . . .

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; . . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

---

1. Hydrogen sulfide gas forms naturally from water that is made stagnant by a sewer clog.

2. The La Junta city ordinance applicable to sewers defines "pollutant" as,

   any dredged soil, solids, incinerator residue, garbage, sewage, sewage sludge, biological waste or material, biological nutrient, chemical wastes, radioactive material, toxic substance, heat, malodorous substance, wrecked or discharged equipment, rock, sand, slurry, untreatable waste, or industrial, commercial,

domestic or agricultural waste discharged into or with water.
La Junta Ord. 13.12.020(32).

3. The trial court dismissed plaintiffs' negligence per se claims based on city ordinance 3.12.250(b) after finding "Kirkpatrick is 100% liable for the plaintiffs' individual injuries, damages, and losses." We take judicial notice of the ordinances applicable to Hog's Breath at the time under CRE 201 because these are matters of public record. *See In re Interrogatory by Governor Romer*, 814 P.2d 875, 880 (Colo.1991).

¶ 9 Mountain States initially defended Kirkpatrick under a reservation of rights. Eventually, however, it brought a declaratory judgment action in federal court asserting that it had no duty to defend Kirkpatrick based on the pollution exclusion clause. *Mountain States Mut. Cas. Co. v. Kirkpatrick*, No. 06–CV–00221, 2007 WL 2506640 (D.Colo. Aug. 30, 2007) (unpublished order). The federal court found Mountain States had no duty to defend because "under the plain meaning of the words and in the context of the facts and circumstances alleged in the Underlying Lawsuit .... [t]he grease and oil, in the quantities allegedly at issue," are contaminants and therefore pollutants. *Id.* at *4.[4]

¶ 10 Thereafter, Mountain States did not defend Kirkpatrick. On summary judgment, the state trial court found Kirkpatrick liable for respondents' injuries because Hog's Breath dumped greasy water in the sewer in great enough amounts to cause the sewer clog, which in turn created a buildup of hydrogen sulfide gas. After a one-day trial on damages, respondents obtained a monetary judgment against Kirkpatrick and were awarded costs.

¶ 11 Apparently unable to collect from Kirkpatrick, respondents served a writ of garnishment on Mountain States. When it reappeared in state court, Mountain States moved for summary judgment asserting it had no duty to indemnify based on the pollution exclusion and the federal court's ruling. The trial court granted Mountain States' summary judgment motion, finding the pollution exclusion barred coverage. Respondents appealed.

¶ 12 In a published opinion, the court of appeals reversed and remanded the case with directions. *Roinestad*, —— P.3d at ——. It held that the terms of the pollution exclusion

clause were ambiguous and that its application to cooking—grease a common everyday waste product—could lead to absurd results and negate essential coverage. *Id.* The court of appeals reversed the district court and remanded the case with directions to enter judgment for respondents and to enforce the writ of garnishment. We granted certiorari,[5] and now reverse the court of appeals' decision.

## II.

¶ 13 Because this case was decided on summary judgment, our review of legal questions is de novo. *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 146 (Colo.2007). We also review insurance contract interpretation questions de novo. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999).

¶ 14 The question here is whether the pollution exclusion clause at issue, which states that the insurance policy "does not apply to ... bodily injury ... arising out of the actual ... *discharge* ... *of pollutants* ... from any premises" occupied by an insured, (emphasis added), excludes the conduct that occurred in this case. Respondents do not dispute that cooking grease was "discharged" from the restaurant in quantities large enough to create the sewer clog, nor do they dispute their injuries "arose out" of such a discharge. Rather, the contested issue is whether the discharge of cooking grease under the circumstances of this case amounted to a discharge of a "pollutant" so as to fall within the pollution exclusion clause.

¶ 15 Mountain States' policy defines pollutants as "any solid, liquid, gaseous or thermal irritant *or contaminant*, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recy-

---

4. Mountain States named Hog's Breath and Kirkpatrick in the federal action, but not the respondents. Accordingly, the federal court's judgment is not binding here. *Taylor v. Sturgell*, 553 U.S. 880, 898, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).

5. Specifically, we granted certiorari on the following issues:

1. Whether the court of appeals erred in construing Mountain States' pollution exclusion clause to not exclude coverage for plaintiffs' injuries.
2. Whether, in this case, the court of appeals erred by directing the district court to enter judgment for plaintiffs and to enforce the writ of garnishment rather than remanding the case to district court for further proceedings.

cled, reconditioned or reclaimed." (Emphasis added). In essence, a pollutant is any substance that is an irritant or a contaminant. We must first determine whether cooking grease is a contaminant and thus a pollutant under the pollution exclusion clause.

■ ¶ 16 When interpreting an insurance contract, we first give effect to the plain meaning of its terms, *see Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.*, 833 P.2d 741, 744 (Colo.1992), and we only find ambiguity where a term is reasonably susceptible to more than one meaning, *id.* at 746. In this instance, "contaminant" is not a defined term in Mountain States' policy, but for purposes of construing pollution exclusion clauses, the term is commonly understood to mean a substance that contaminates by making something unfit for use or impure by the introduction of unwholesome or undesirable elements. *See, e.g., Evanston Ins. Co. v. Harbor Walk Dev., LLC,* 814 F.Supp.2d 635, 653 (E.D.Va.2011) (defining contaminant as something that "make[s] unfit for use by the introduction of unwholesome or undesirable elements" when construing a pollution exclusion clause); *New Salida Ditch Co. v. United Fire & Cas. Ins. Co.,* 2009 WL 5126498, at *7 (D.Colo.2009) (same); *Mountain States Mut. Cas. Co. v. Kirkpatrick,* 2007 WL 2506640, at *3-4 (D.Colo.2007) (same); *see also Webster's Third New International Dictionary* 1491 (2002) (defining the word contaminant as something that "soil[s], stain[s], corrupt[s], or infect[s] by contact or association" or "render[s] unfit for use by the introduction of unwholesome or undesirable elements"). These definitions alone suggest that cooking grease becomes a contaminant when discharged into a sewer in quantities sufficient to create a clog. But the term contaminant is further clarified—and rendered unambiguous—by examining the facts and circumstances of this case.

¶ 17 When respondents were injured, La Junta city ordinance 13.12.250(b) prohibited the discharge of "[s]olid or viscous pollutants in amounts which will cause obstruction to the flow [of the sewer, or] . . . [p]ollutants

which result in the presence of toxic gases, vapor or fumes within the POTW in a quantity that may cause acute worker health and safety problems." La Junta city ordinance 13.12.250(b)(3) recognizes that a variety of substances [6] introduced in large quantities can render sewers unfit for use—that is, become contaminants—by "caus[ing] obstruction to the flow." Most importantly, quantity matters. While a resident of La Junta who dumps an occasional pan of greasy water into a sewer may not contaminate and therefore not pollute the sewer, a restaurant that repeatedly dumps large amounts of cooking grease or greasy water into a sewer over time, thereby creating a five- to eight-foot clog, is dumping contaminants (and thus pollutants as defined by Mountain States' insurance policy) into La Junta's sewers. Indeed, the trial court concluded "the undisputed evidence shows that it was Kirkpatrick's inappropriate disposal of grease and oil into the sewer that [led] to the sewer clog, and the consequent buildup of hydrogen sulfide gas." This conclusion parallels exactly what city ordinance 13.12.250(b) prohibits.

■ ¶ 18 Respondents seek to avoid this conclusion by invoking the reasonable expectations doctrine. They claim that pollution exclusion clauses were incorporated in commercial liability policies to relieve insurers of liability for clean-up and other costs associated with federal environmental protection laws such as the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). From this, they argue that a reasonable insured would expect pollution exclusion clauses to exclude coverage only for "traditional" pollution as contemplated by CERCLA, not cooking grease. *See Bailey v. Lincoln Gen. Ins. Co.,* 255 P.3d 1039, 1048–49 (Colo.2011) (explaining the reasonable expectations doctrine).

■ ¶ 19 The reasonable expectations doctrine may override exclusionary policy language,

    (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or

---

**6.** La Junta's definition of "pollutant," *supra* note 2, encompasses virtually everything that might be

discharged into a sewer, including "commercial . . . waste." La Junta Ord. 13.12.020(32).

she is not entitled to the coverage at issue; and (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise.

*Id.* Contrary to respondents' claim, neither of these situations is present here.

¶ 20 The pollution exclusion clause in the policy says nothing about federal environmental protection laws, or "traditional" pollution, however that term might be defined. Instead, it uses general language to exclude coverage for discharges of waste or substances that irritate or contaminate. Pollution exclusion clauses have been construed broadly in Colorado since at least the 1990s. *See generally TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483 (Colo.App.1997). Based on the language of the policy, there is no reason to believe that an ordinary person would understand the pollution exclusion clause to apply only to "traditional" pollution, nor would prevailing law limit the exclusion in such a way.

¶ 21 In addition, as noted above, the dumping of large quantities of cooking grease into the sewer such that a clog would form would run afoul of at least one city ordinance.[7] An ordinary person could not read the pollution exclusion clause to exclude "traditional" pollution but preserve coverage for conduct that violated a city ordinance prohibiting the discharge of "solid or viscous pollutants in amounts which will cause obstruction to the flow." *Cf. Bailey*, 255 P.3d at 1052 (concluding that an ordinary objectively reasonable person would not read the criminal acts ex-

ception to provide coverage for driving a rental car at a high speed to avoid pursuing police officers). In sum, we cannot conclude that an objectively reasonable person would interpret the pollution exclusion clause to bar coverage only for "traditional" pollution. Nor can we conclude that an ordinary reasonable person would have been "deceived" into thinking that there would be coverage for the dumping of cooking grease in such a great volume as to clog the sewer, as respondents have produced no facts in this case to suggest such deception.

¶ 22 The court of appeals did not consider the respondents' argument that the pollution exclusion clause must be read to apply only to "traditional" pollution. *Roinestad*, —— P.3d at ——. Instead, it based its decision on its concern that because cooking grease is a common everyday waste product, considering it to be "pollution" would lead to the negation of essential insurance coverage and absurd results. *Id.* at ——. While we are mindful of the concerns expressed by the court of appeals, we find them inapplicable here. In this case, the restaurant discharged enough cooking grease into the sewer system to create a five- to eight-foot clog that led to a dangerous buildup of toxic gas—conduct that violated a city ordinance prohibiting the discharge of a pollutant in an amount that creates an obstruction to the sewer flow. We agree with the district court that, under the circumstances of this case, the discharge of cooking grease amounted to a discharge of a pollutant.[8] Therefore, the pollution exclusion clause bars coverage, and the insurance policy cannot be garnished to compensate respondents for their bodily injuries.[9]

---

7. Respondents alleged in their amended complaint that Hog's Breath violated La Junta city ordinance 13.12.250(b) and specifically asserted that Hog's Breath discharged "viscous pollutants." Apparently finding those allegations unhelpful here, they now point out that it was never determined whether the conduct at issue violated the ordinance, given that the negligence per se claim was dismissed once liability was established on other grounds. We note that the trial court did, however, find that Kirkpatrick caused the sewer clog by "inappropriately" disposing of cooking grease in the sewer. But the question is not whether the restaurant was found to have violated the ordinance, but rather whether an ordinary objectively reasonable insured would

have understood that the conduct here would fall within the policy's coverage.

8. Because we base our decision on the discharge of cooking grease, we need not consider respondents' additional argument regarding whether the hydrogen sulfide constituted a discharge of a pollutant in this case. *Roinestad*, —— P.3d at —— - ——.

9. Because we find that the conduct in question falls within the pollution exclusion clause, we need not consider the second certiorari question regarding the court of appeals' instructions on remand.

### III.

¶ 23 For the foregoing reasons, we reverse the decision of the court of appeals.