FILED
United States Court of Appeals
Tenth Circuit

June 19, 2018

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENH CIRCUIT

---

AUTO-OWNERS INSURANCE
COMPANY, a Michigan corporation,

Plaintiff Counter
Defendant - Appellee,

v.

JENNIFER CSASZAR, a Colorado
individual,

Defendant Counter
Claimant - Appellant.

No. 17-1075

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### (D.C. NO. 1:15-CV-02318-CMA-KMT)

---

Stephen B. Shapiro, Shapiro Beiging Barber Otteson LLP (M. Gabriel McFarland, Evans & McFarland, LLC, Golden, Colorado, with him on the briefs), Denver, Colorado, for Appellant.

John D. Mereness (Gregory R. Giometti with him on the brief), Gregory R. Giometti & Associates, P.C., Denver, Colorado for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **BACHARACH**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

Auto-Owners Insurance Company provided automobile insurance to Frank and Nancy Csaszar and their daughter, Jennifer.[1]  But when that policy's term came to a close, Auto-Owners informed Mr. and Mrs. Csaszar that, because of their daughter's driving record, it would only renew their policy if it excluded her from coverage.  The Csaszars agreed.  The policy accordingly included an "excluded-driver" provision that stated the policy "shall provide no coverages" for "claims arising out of [Jennifer Csaszar's] operation or use of any automobile."  App. at 205.

While this new policy was operative, an uninsured motorist rear-ended Ms. Csaszar while she was driving a vehicle not scheduled under her parents' Auto-Owners policy.  To receive compensation for her injuries, Ms. Csaszar filed a claim with Auto-Owners, requesting it pay her $500,000 in uninsured and underinsured motorist (UM/UIM) coverage.  Auto-Owners denied the claim because it believed the excluded-driver provision barred Ms. Csaszar from such coverage.  It then sought a declaratory judgment that Ms. Csaszar is not entitled to any coverage, including UM/UIM coverage, under her parents' policy.  In

---

[1]  The policy also insured the Csaszars' other daughter, Angela.  Because Angela's insurance coverage is not relevant to this appeal, we only discuss Jennifer's coverage.

Further, for clarity we refer to Jennifer Csaszar as "Ms. Csaszar," and her parents as "Mr. and Mrs. Csaszar" or "the Csaszars."

response, Ms. Csaszar filed a counterclaim seeking a declaration she is, in fact, entitled to this coverage.

The district court granted Auto-Owners' motion for summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**. As we explain, the excluded-driver provision unambiguously bars Ms. Csaszar from all coverage—including UM/UIM coverage—when she drives any automobile. Ms. Csaszar also argues that if the excluded-driver provision bars her from coverage when she drives any automobile, then the provision is void as contrary to Colorado public policy. We disagree. The Colorado Court of Appeals squarely rejected this argument in *Massingill v. State Farm Mutual Automobile Insurance,* 176 P.3d 816 (Colo. App. 2007), when it held that if an insurer excludes a resident relative such as Ms. Csaszar from liability coverage, it may also exclude that person from UM/UIM coverage.

## I. Background

Auto-Owners Insurance Company provided automobile insurance to Frank and Nancy Csaszar and their daughter, Jennifer. But towards the end of that policy's terms, because of Ms. Csaszar's driving record, Auto-Owners sent Mr. and Mrs. Csaszar a "Notice of Non-Renewal" stating it would only renew the policy if they "agree[d] in writing that the policy does not apply to . . . Jennifer L.

-3-

Csaszar." App. at 188. The Csaszars agreed. The new policy thus included the

following "Exclusion of Named Person" provision (excluded-driver provision):

> Dear Policyholder**:**
>
> The following is a renotification of an excluded driver(s) under your automobile policy with our company.
>
> This policy shall provide no coverages for any damages, losses or claims arising out of operation or use of any automobile to which this policy would otherwise apply when such automobile is operated or used by the below individual(s).
>
> This exclusion shall apply whether or not such operation or use is with expressed or implied permission of a person or organization insured by this policy.
>
> All other policy terms and conditions apply.
>
> Excluded driver(s):
> Jennifer L. Csaszar

App. at 205.

Three vehicles were scheduled under the policy—an Audi, a Porsche, and a

Toyota. In addition to providing liability coverage, the policy also included up to

$500,000 of uninsured and underinsured motorist (UM/UIM) coverage.

Ms. Csaszar jointly owned a car with her mother that was not scheduled

under her parents' Auto-Owners policy—a Subaru Impreza. She bought a

separate insurance policy from Geico to cover her use of the Subaru. That policy

included $300,000 in UM/UIM coverage.

While Ms. Csaszar was driving the Subaru Impreza, an uninsured driver rear-ended her. The uninsured driver was completely at fault. Ms. Csaszar suffered numerous injuries from the accident, including a serious brain injury. She sought, and received, Geico's $300,000 UM/UIM coverage limit. But hoping to more fully recover compensation for her injuries—Ms. Csaszar claims the accident caused her over $4,000,000 in damages—she asked Auto-Owners to pay her the $500,000 UM/UIM coverage limit of her parents' policy.

Auto-Owners denied the claim. It subsequently sought a declaratory judgment that Ms. Csaszar is not entitled to coverage, including UM/UIM coverage, under her parents' policy. Ms. Csaszar filed a counterclaim seeking a declaration she is entitled to such coverage. Both parties moved for summary judgment.

The district court granted Auto-Owners' motion for summary judgment. It first concluded the excluded-driver provision unambiguously barred Ms. Csaszar from coverage. The court also rejected her public policy argument.

## II. Analysis

We review a district court's decision to grant a motion for summary judgment de novo. *Philadelphia Indem. Ins. v. Lexington Ins.*, 845 F.3d 1330, 1336 (10th Cir. 2017). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Savant*

*Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). And when, as in this case, our jurisdiction is based on diversity of citizenship, "we apply the substantive law of the forum state"—which here is Colorado. *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015).

Ms. Csaszar argues the district court erred by granting summary judgment in favor of Auto-Owners for two reasons: (1) the excluded-driver provision does not unambiguously bar her from coverage when she drives an unscheduled vehicle, and (2) if the excluded-driver provision does bar her from this coverage, it violates Colorado public policy and is thus void.[2] Both arguments lack merit.

### A.    The Excluded-Driver Provision

Under Colorado law, when "construing the terms of insurance policies, we apply principles of contract interpretation." *Cotter Corp. v. Am. Empire Surplus Lines Ins.*, 90 P.3d 814, 819 (Colo. 2004). In so doing, "we accord contract terms their plain and ordinary meanings." *Bohrer v. Church Mut. Ins.*, 965 P.2d 1258, 1261 (Colo. 1998). When "the language of an insurance contract is clear and unambiguous on its face, it must be upheld as written." *Spaur v. Allstate Ins.*, 942 P.2d 1261, 1263 (Colo. App. 1996). And Colorado law compels us to

---

[2] Ms. Csaszar also argues the district court improperly relied on extrinsic evidence—specifically, the "Notice of Nonrenewal and the Exclusion of Named Person" form. Aplt. Br. at 31. Even assuming the district court improperly relied on this document, this does not warrant reversal. Under de novo review—and based on the insurance policy itself, not extrinsic evidence—we conclude the policy unambiguously bars Ms. Csaszar from UM/UIM coverage.

"neither rewrite an unambiguous policy nor force a strained construction in order to" interpret it "against the insurer." *Id.*

At the same time, when "an insurer seeks to restrict coverage, the limitation must be clearly expressed." *Ryder Truck Rental Inc. v. Guar. Nat. Ins.*, 770 P.2d 1380, 1382 (Colo. App. 1989). If the limitation is "ambiguous, then the contract must be construed in favor of coverage and against" the limitation. *Id.* "A contractual term is ambiguous 'if it is susceptible on its face to more than one reasonable interpretation.'" *Am. Family Mut. Ins. v. Hansen*, 375 P.3d 115, 120 (Colo. 2016) (quoting *USAA Cas. Ins. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005)). Whether an insurance policy is ambiguous is a question of law. *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins.*, 917 P.2d 321, 232 (Colo. App. 1995). The insurer bears the burden of establishing the exclusion is not subject to any other reasonable interpretation. *Hecla Mining Co. v. New Hampshire Ins.*, 811 P.2d 1083, 1090 (Colo. 1991).

Colorado also follows the doctrine of reasonable expectations. As relevant here, under this doctrine Colorado will not enforce an exclusionary provision "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue." *Mountain States Mut. Cas. Co. v. Roinestad*, 296 P.3d 1020, 1024–25

(Colo. 2013).[3] Thus, even if a "coverage-provision[] may not be ambiguous in a technical sense"—that is, it is not ambiguous enough to be "subject to the rule that ambiguities must be construed against the drafter"—the provision may nevertheless "be held unenforceable" under the doctrine if it is "ambiguous from the perspective of an ordinary reader." *Bailey v. Lincoln Gen. Ins.*, 255 P.3d 1039, 1050 (Colo. 2011).

Ms. Csaszar contends the excluded-driver provision only bars her from coverage when she drives a scheduled vehicle. We disagree. By its terms, the exclusion unambiguously bars Ms. Csaszar from coverage when she drives any automobile—not just a scheduled vehicle under the policy. As the provision's plain language states, the "policy shall provide no coverage . . . arising out of operation or use of *any* automobile to which this policy would otherwise apply." App. at 205 (emphasis added). The plain and ordinary meaning of "any automobile" is just that—any automobile. Nowhere does the provision state it only applies when Ms. Csaszar operates "any scheduled automobile." Nor does any language in the provision modify "automobile" in a manner that suggests the

---

[3] The doctrine of reasonable expectations also applies "where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise." *Roinestad*, 296 P.3d at 1025. When the doctrine applies in this way, it serves as "a means of avoiding an unfair result where the insurer has engaged in some sort of deception." *Craft v. Philadelphia Indem. Ins.*, 343 P.3d 951, 960 (Colo. 2015). This application of the doctrine is not implicated by this case.

term applies only to scheduled vehicles. And in fact, at oral argument Ms. Csaszar's counsel conceded the excluded-driver provision bars her from coverage.[4] We therefore conclude the excluded-driver provision unambiguously precludes Ms. Csaszar from all coverage when she drives any automobile.[5]

Ms. Csaszar's arguments to the contrary prove unpersuasive. She focuses on the fact the provision only bars coverage "arising out of the use of any automobile *to which this policy would otherwise apply*." App. at 205 (emphasis added). In her view, the policy only "otherwise appl[ies]" to the three vehicles scheduled under it. She thus contends the exclusion provision, too, only applies when she drives one of those three vehicles. But Ms. Csaszar cannot have it both ways. Her entire theory of the case is that she *can* recover UM/UIM benefits

---

[4] *See Oral Argument* at 8:30–9:14:

> The Court: So your argument is solely that it is a violation of public policy. But you're not questioning the . . . express exclusion under the policy . . . of any UM coverage [for Ms. Csaszar] for driving a non-schedule automobile, am I correct?

> Counsel: As written, if you apply it as written, that's what it says.

[5] Ms. Csaszar also argues the doctrine of reasonable expectations entitles her to coverage. She states that since her interpretation of the policy "is eminently reasonable," this "confirm[s] the exclusion is susceptible to multiple reasonable interpretations and thus is ambiguous under the reasonable expectations doctrine." Aplt. Br. at 29. But as we explained above, this interpretation is afield from an ordinary interpretation of the provision's plain language.

under the policy for an injury that arose *while* she was operating an *unscheduled vehicle*. Ms. Csaszar's interpretation of "otherwise apply," then, conflicts with her theory of recovery.

Further, Ms. Csaszar highlights how the exclusion provision "shall apply whether or not such operation or use is with expressed or implied permission of a person or organization insured by this policy." App. at 205. Because her parents could only give her permission to drive cars they own—the three scheduled automobiles—Ms. Csaszar argues the exclusion itself must also apply only to those three vehicles. This permission provision does not, however, stand for as much. The provision is a narrow clarification that the exclusion continues to apply even when permission was given. It does not prove the inverse—that the exclusion can *only* apply to vehicles that Mr. and Mrs. Csaszar *could* give their daughter permission to drive. In other words, the tail of the permission provision cannot wag the dog of the entire excluded-driver provision.

In sum, the excluded-driver provision unambiguously bars Ms. Csaszar from coverage under her parents' Auto-Owners policy for any injuries arising from her operation of any automobile.

### B.    *Colorado Public Policy*

Next, if the excluded-driver provision bars her from coverage, Ms. Csaszar argues it is void because it violates Colorado public policy. We disagree.

"[A]ttempting to dilute, condition, or limit statutorily mandated coverage" violates Colorado public policy. *DeHerrera v. Sentry Ins.*, 30 P.3d 167, 173 (Colo. 2001). To determine if a policy does so, Colorado courts "look to both the plain language of the statute and its legislative purpose." *Id.* The purpose of requiring UM/UIM coverage is to "assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." *Id.* at 174 (quoting Ch. 91, sec. 1, 1965 Colo. Sess. Laws 333). Thus, a "policy that limits UM/UIM benefits under circumstances where the General Assembly intended for UM/UIM benefits to be recovered is invalid." *Id.* at 173.

The parties agree that, absent any exclusion, Ms. Csaszar would be covered by her parents' insurance policy since she qualifies as a resident relative. Colo. Rev. Stat. § 10–4–601(5) (defining "[i]nsured" to include "relatives of the named insured who reside in the same household as the named insured"); *see also DeHerrera*, 30 P.3d at 176 (noting a "son, as a resident relative of the named insured, is a person insured under the policy"). And under Colorado law, all "motor vehicle liability polic[ies] insuring against loss resulting from liability" must include UM/UIM coverage. Colo. Rev. Stat. § 10–4–609(1)(a). But the

-11-

statute carves out an exception: "the named insured may reject such coverage in writing." Colo. Rev. Stat. § 10–4–609(1)(a).[6]

Nevertheless, Ms. Csaszar claims Colorado public policy does *not* permit excluding resident relatives from UM/UIM coverage—at least when an un/under insured motorist is completely at fault for injuring the relative. Her argument centers on the difference between liability coverage and UM/UIM coverage. It makes sense, she says, to allow insurers to exclude resident relatives with poor driving records from liability coverage, since insuring those drivers involves a substantial amount of risk. Yet she insists it does not make sense to allow insurers to exclude them from *UM/UIM coverage* when the injured relative was completely without fault. After all, every driver—whether their record is poor or pristine—is equally likely to be injured by an at-fault uninsured motorist.

---

[6] More specifically, the full statute provides:

> In any case where an insurer is authorized under this part 6 to cancel or refuse to renew or increase the premiums on an automobile liability insurance policy under which more than one person is insured because of the claim experience or driving record of one or more but less than all of the persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to continue or renew the insurance but to exclude from coverage, by name, the person whose claim experience or driving record would have justified the cancellation or nonrenewal.

Colo. Rev. Stat. § 10–4–630(1).

-12-

This has some valence as a policy argument. And indeed, as Ms. Csaszar points out, numerous states have followed this reasoning to conclude it violates that state's public policy to bar innocent-insured drivers like her from UM/UIM coverage. *See, e.g.*, *State Farm Mut. Auto. Ins. v. Washington*, 641 A.2d 449, 452 (Del. 1994). But we, of course, do not view this policy question in a vacuum. We must apply Colorado law. And in *Massingill v. State Farm Mutual Automobile Insurance*, 176 P.3d 816 (Colo. App. 2007), the Colorado Court of Appeals rejected the exact argument Ms. Csaszar now advances.

In *Massingill*, the Colorado Court of Appeals considered "whether an insurance company may deny UM/UIM coverage to a resident relative driver . . . when the policy excludes the driver from coverage because of a poor driving record." 176 P.3d at 818. And there, as here, the resident relative argued barring him from UM/UIM coverage improperly diluted or limited statutorily mandated coverage. *Id.* at 821. The Colorado Court of Appeals was unpersuaded. It emphasized that the "language of the UM/UIM statute . . . demonstrates that coverage for an excluded driver is not mandated." *Id.* After all, the statute only mandates UM/UIM coverage for "persons insured thereunder." § 10–4–609(1). This phrase, the court concluded, "means that insurers must provide UM/UIM coverage for the protection of *persons* insured *under the liability policy* that the insurer is issuing." *Massingill*, 176 P.3d at 822 (second emphasis added) (quoting *DeHerrera*, 30 P.3d at 175).

The court went on to consider—and reject—Ms. Csaszar's risk-based argument. It "recognize[d] that UM/UIM coverage is designed to protect persons who are not 'at fault' in an accident, and that the risks in insuring against uninsured and underinsured motorists are very different from those taken into account in the liability provisions of a policy." *Id.* Nevertheless, the court "perceive[d] no reason why an insurance company can permissibly preclude all other coverage under an automobile policy using a named driver exclusion, but not UM/UIM coverage." *Id.*

*Massingill* therefore controls this case. Under it, so long as an insurance policy provides no liability coverage to a resident relative, denying that relative UM/UIM coverage comports with Colorado public policy. Thus, because the Auto-Owners policy bars Ms. Csaszar from liability coverage, it does not violate Colorado public policy for it to also bar her from UM/UIM coverage.[7]

_____

[7] We realize that "we are not bound by a lower state court decision," but must instead predict what the Colorado Supreme Court would do if presented with the issue. *See, e.g.*, *Clark v. State Farm Mut. Auto. Ins.*, 319 F.3d 1234, 1240–41 (10th Cir. 2003). Even so, "decisions of a state's intermediate appellate courts are some evidence of how the state supreme court would decide the issue, and we can consider them as such." *Id.* And the Colorado Court of Appeals' decisions are particularly instructive when there is "no indication that the Colorado Supreme Court would decide the matter differently." *Romero v. Int'l Harvester Co.*, 979 F.2d 1444, 1449 n.3 (10th Cir. 1992).

Ms. Csaszar points us to no Colorado Supreme Court case that casts doubt on *Massingill*'s reasoning. As we explain, the cases Ms. Csaszar contends question *Massingill* are, in fact, distinguishable. We are consequently convinced that, if presented with this issue, the Colorado Supreme Court would find the

(continued...)

-14-

Ms. Csaszar argues *Massingill* is distinguishable for two reasons.[8]  Neither persuades us.  First, she highlights how the driver in *Massingill* was "between zero and forty percent at fault."  *Id.*  She thus argues *Massingill*'s holding is limited to situations in which the excluded driver was partially at fault; it does not apply where, as here, the excluded driver was entirely without fault.  But this argument ignores the fact that the driver in *Massingill* was "*between* zero and forty percent at fault," and could have been partially at fault, or he could have been entirely without fault.  *Id.* (emphasis added).  That *Massingill* nonetheless held it did not contravene Colorado public policy to exclude that driver from UM/UIM coverage demonstrates *Masingill*'s holding applies in both situations.

Second, Ms. Csaszar contends the excluded-driver provision here substantively differs from the provision in *Massingill*.[9]  But she bases this difference on her view that this exclusion applies only when she drives a scheduled vehicle.  We have already rejected this argument.

---

[7](...continued)
reasoning of *Massingill* persuasive and apply it.

[8]  Ms. Csaszar also argues the "*Massingill* opinion is fundamentally flawed because it relies upon No Fault or PIP law rather than UM/UIM law in reaching its conclusion."  Aplt. Br. at 22.  But the Colorado Court of Appeals merely analogized to PIP and No Fault cases; we see no reason why this renders the opinion "fundamentally flawed."

[9]  The exclusion in *Massingill* stated that "no liability or obligation of any kind shall attach . . . while any motor vehicle is operated" by the excluded driver.  *Massingill*, 176 P.3d at 819.

-15-

She also argues her parents' policy violates Colorado public policy because it provides her with *partial* UM/UIM coverage. In short, Ms. Csaszar claims Colorado public policy requires UM/UIM coverage to be all or nothing—perhaps insurers can *completely* preclude someone from such coverage, but they cannot chop the coverage up and sometimes provide it, but sometimes not. This is precisely what her parents' policy does, she claims, because she *can* recover UM/UIM benefits as a pedestrian or a passenger, but *cannot* when she operates an automobile.

Ms. Csaszar cites three cases that, in her view, demonstrate it violates public policy to provide partial UM/UIM coverage. First, in *DeHerrera*, the Colorado Supreme Court held it violated public policy for an insurer to only provide UM/UIM coverage if a resident relative was injured while driving a *car*, not if he was injured driving a *motorcycle*. 30 P.3d at 173–76. Likewise, in *Jaimes v. State Farm Mut. Auto. Ins.*, the Colorado Court of Appeals held it contravened Colorado public policy to offer an insured driver UM/UIM coverage only when he drove a vehicle covered by that policy, not when he drove non-scheduled vehicles. 53 P.3d 743, 744–47 (Colo. App. 2002). Finally, in *Pacheo v. Shelter Mut. Ins.*, this court held it violated Colorado public policy to only provide resident relatives UM/UIM coverage if they did not own a vehicle. 583 F.3d 735, 738–41 (10th Cir. 2009).

Yet Ms. Csaszar glosses over a key detail from all three cases. In each one, the insurer *provided liability coverage* to the driver the policy partially precluded from UM/UIM coverage. These cases therefore only stand for the proposition that it violates Colorado public policy for insurers to provide partial UM/UIM coverage to those whom they provide full liability coverage. *See Aetna Cas. & Sur. Co. v. McMichael*, 906 P.3d 92, 98 (Colo. 1995) (stating it "interpret[s] [§] 10–4–609(1) to require insurers to offer UM/UIM coverage to a class of individuals coextensive with the class covered by the liability provision of the respective policy"). They do not address the different situation in this case in which the driver being denied UM/UIM coverage is *expressly excluded* from liability coverage. *Massingill* addressed that situation, and answered the question in the negative.[10]

In sum, Colorado public policy does not prohibit the UM/UIM exclusion in Auto-Owners' automobile policy.

## III. Conclusion

The district court properly granted Auto-Owners' motion for summary judgment. The excluded-driver provision in the Csaszars' policy from Auto-Owners expressly bars Ms. Csaszar from all coverage—including UM/UIM

---

[10] Ms. Csaszar also argues two of the policy's subsections relating to UM/UIM coverage, subsections 2.a and 2.b(2), violate public policy. Because we conclude Ms. Csaszar is entirely excluded from UM/UIM coverage for injuries arising from her operation of any vehicle, we need not consider this argument.

coverage—for injuries arising from her operation of any automobile.  This does not violate Colorado public policy.

We accordingly **AFFIRM**.